399 Mass. 687 (1987)
506 N.E.2d 509
PATRICIA DIGHTON & others[1]
vs.
FEDERAL PACIFIC ELECTRIC COMPANY; SERT, JACKSON & ASSOCIATES, INCORPORATED, & others,[2] third-party defendants (and a companion case[3]).
Supreme Judicial Court of Massachusetts, Suffolk.
January 8, 1987.
April 21, 1987.
Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS & NOLAN, JJ.
Stephen M.A. Woodworth for Federal Pacific Electric Company.
Carol A. Griffin for Sert, Jackson & Associates, Incorporated.
Cornelius J. Moynihan, Jr. (Patricia A. McEvoy with him) for Kaiser Aluminum and Chemical Corp.
Martin S. Cosgrove for Leslie W. Abbott, administratrix, & others.
LIACOS, J.
The defendant and third-party plaintiff, Federal Pacific Electric Company (Federal Pacific), asks us to reconsider whether a manufacturer is protected by the so-called "statute of repose," G.L.c. 260, § 2B[4] (hereafter § 2B); *689 and, if not, whether the statute is unconstitutional because it is violative of the Fourteenth Amendment to the Constitution of the United States or art. 11 of the Constitution of the Commonwealth.
These questions come to us on a scanty record, comprised largely of the pleadings. Nonetheless, the following facts are not disputed. On November 18, 1980, fire ravaged an apartment at 120 Ironside Way in Charlestown, the residence of Patricia Dighton and her family. As a result of that fire, death came to Dighton's foster children, James Abbott and Casandra Chiminello. Dighton and her two sons were injured as well.
Three years later, Dighton and her sons brought suit in Suffolk Superior Court against Federal Pacific, alleging negligence and breach of warranty with respect to a circuit breaker manufactured by the defendant and "located on the premises" where the fire occurred. On the same date, a similar action for wrongful death was brought against Federal Pacific by Leslie W. Abbott and Richard Stafford, acting in their respective capacities as administrators of the estates of James Abbott and Casandra Chiminello. On a motion by Federal Pacific, these actions were consolidated.
In 1985, the judge permitted Federal Pacific to implead several third-party defendants as to both actions. Among these was the architectural firm which had designed the building, Sert, Jackson & Associates, Incorporated (Sert Jackson).[5] In *690 1986, the judge granted Sert Jackson's motion to dismiss Federal Pacific's third-party complaint because Sert Jackson could be liable for contribution only if it could be directly liable to the plaintiffs, see Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524 (1978), and because any direct claims by the plaintiffs against Sert Jackson were barred by § 2B. Separate and final judgment was entered for Sert Jackson, and Federal Pacific appealed.
At the time he granted Sert Jackson's motion, the judge also denied a motion by Federal Pacific under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), to dismiss the plaintiffs' claims. Federal Pacific claimed the protection of § 2B, arguing that, as one similarly situated to architects, it was entitled to the same statutory protection under G.L.c. 260, § 2B, as Sert Jackson. Federal Pacific had conceded in its memorandum, however, that its status was solely that of "a supplier and a manufacturer of a construction component"; the judge noted as well that the defendant did not claim to have rendered any "construction services." Relying on what was said about the intended scope of § 2B in Klein v. Catalano, 386 Mass. 701 (1982), the judge ruled that Federal Pacific, "as a supplier, does not fall within the statutory class envisioned by the legislature." Relying on what was said in Milligan v. Tibbetts Eng'g Corp., 391 Mass. 364 (1984), the judge held that Federal Pacific's circuit breaker panel "did not constitute [an] ... improvement to real property" under § 2B because it was neither "permanent" nor "intimately connected with the real property." The judge then exercised his discretion pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and reported to the Appeals Court the following questions of law: "1. Under G.L.c. 260 § 2B is a manufacturer who supplies a construction component that becomes an integral part of structure within the class of entities involved in `the design, planning, construction or general administration of an improvement to real property'? 2. Do the acts of designing, manufacturing and supplying a circuit breaker panel that subsequently becomes an integral part of a structure constitute an `improvement to real property' within the meaning of G.L.c. 260 § 2B?" The Appeals *691 Court granted a motion by Federal Pacific to consolidate the judge's reports and its appeals of his orders dismissing the third-party actions against Sert Jackson. We granted Federal Pacific's application for direct appellate review.
Federal Pacific advances several arguments in support of its contention that the judge erred by dismissing its third-party complaint against Sert Jackson. It also argues, with respect to the court's denial of its own motion to dismiss, that we should adopt one of two alternative positions: (a) that the judge should have construed § 2B to include Federal Pacific within its protective ambit; or (b) that the judge construed § 2B correctly, but that such a construction renders § 2B unconstitutional under the Fourteenth Amendment, with the result that the judge's order dismissing Federal Pacific's claims against Sert Jackson must be reversed.
We hold that dismissal was properly ordered as to Sert Jackson. We further hold that the judge properly denied Federal Pacific's motion to dismiss. We answer both of the reported questions in the negative.
1. Dismissal of the third-party complaint. Federal Pacific argues that § 2B does not apply to its third-party action for contribution because § 2B, by its terms, only bars any "[a]ctions of tort." Contribution is available, however, only "where two or more persons become jointly liable in tort" (emphasis supplied). G.L.c. 231B, § 1 (a), inserted by St. 1962, c. 730, § 1. The right to contribution is derivative of the joint liability in tort of the third-party plaintiff and the third-party defendant. See generally O'Mara v. H.P. Hood & Sons, 359 Mass. 235, 238 (1971), and cases cited. See also Liberty Mut. Ins. Co. v. Westerlind, supra. Without liability in tort, there is no right to contribution.[6]James Ferrera & Sons v. Samuels, 21 Mass. App. Ct. 170, 174 (1985).
*692 Federal Pacific claims, in addition, that since "`misuse' of a product by an architect" is alleged in the third-party complaint, it is not barred by the language of § 2B. "Misuse," however, is clearly encompassed within the statutory reference to "any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" (emphasis supplied). G.L.c. 260, § 2B.
Federal Pacific cites, as authority for its contention, our statement that "[a]n action for contribution is not barred if, at the time the tortious activity occurred, the party from whom contribution is sought could have been held liable in tort" (emphasis in original). McGrath v. Stanley, 397 Mass. 775, 781 (1986). McGrath is inapposite. In that decision, we considered the effect on the third-party plaintiffs' rights to contribution from a public entity where primary plaintiffs were barred from suing the public entity directly, due to the plaintiffs' failure to make timely presentment as required by the Massachusetts Tort Claims Act, G.L.c. 258, § 4 (1984 ed.). In those circumstances, we held that c. 258 did not require dismissal of the third-party complaint because, by its explicit language, "[t]he Legislature simply created an exemption from the notice provisions of § 4 for all third-party claims regardless of whether presentment had been made by the party originating the action." McGrath, supra at 780.[7] No analogous exemption appears in § 2B to suggest a legislative intent to permit third-party actions that would otherwise be prohibited by § 2B.
Federal Pacific also maintains that, because its liability may result solely from the architect's negligence, denial of the right to seek contribution is violative of art. 11 of the Massachusetts Declaration of Rights. What was said of the plaintiff in Klein v. Catalano, 386 Mass. 701 (1982), may be said of Federal Pacific as third-party plaintiff here: "We agree... that G.L.c. 260, § 2B, does abolish [the] cause of action against [Sert Jackson] without providing an alternative remedy." Id. at 711. *693 But while art. 11 guarantees the right to "a certain remedy, by having recourse to the laws, for all injuries or wrongs," Federal Pacific does not claim that § 2B operates to deny it any fundamental right, nor any right against Sert Jackson that vested prior to the enactment of § 2B. In these circumstances, there is no escape from our prior holding that application of § 2B does not violate art. 11. Id. at 711-713.[8]
The judge did not err in ruling that § 2B applied to Sert Jackson's motion for dismissal.
2. Construction and constitutionality of § 2B. While Federal Pacific acknowledges that we recently have held to the contrary, see Klein, supra, it urges us either to construe § 2B as including it within the class of protected defendants, or to declare that the statute violates the equal protection guarantees of the Fourteenth Amendment for its failure to protect suppliers whose situations are similar to those of protected architects, construction engineers, and contractors. For the reasons stated in our Klein decision, we continue to hold that § 2B is constitutional even if construed to exclude "suppliers, owners, tenants, and others in possession or control" but not "architects, engineers, contractors and others involved in the design, planning, construction, or general administration of improvements to real property." Klein, supra at 715, 717.[9]
*694 We consider the questions reported. The judge has framed the single question, whether Federal Pacific is entitled to the protection of § 2B, in bipartite form, asking first whether Federal Pacific, as a supplier of construction components, is an actor comprehended by § 2B, and then asking whether its acts  designing, manufacturing, and supplying a circuit breaker panel  are comprehended within the statutory reference to "design, planning, construction or general administration of an improvement to real property."
On its face, § 2B defines the protected actor largely by reference to protected acts. The body of § 2B names no class of protected actors. Rather, its terms extend protection to persons allegedly responsible for acts, i.e., those who commit "any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property."
"Our task is to interpret the statute `according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' Industrial Fin. Corp. v. State Tax Comm'n, 367 Mass. 360, 364 (1975), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934)." O'Brien v. Director of the Div. of Employment Sec., 393 Mass. 482, 487-488 (1984).[10]
*695 On the same day we decided Klein, we remanded a similar case where "it [was] not clear whether [the defendants] were materialmen, whether they rendered architectural or engineering services for the construction of the building ... or whether they furnished both supplies and engineering or architectural services." King's Dep't Stores, Inc. v. Poley-Abrams Corp., 386 Mass. 1008, 1009 (1982). We indicated, "[t]o the extent that these defendants are materialmen, they are not within the protection of G.L.c. 260, § 2B." Id. Just as clearly, any conclusion that Federal Pacific was merely a materialman (and therefore a nonprotected actor) requires a finding that Federal Pacific had not performed protected acts, i.e., that Federal Pacific had not "rendered architectural or engineering services for the construction of the building." Conversely, when faced with cases in which the defendants were protected by § 2B, see Anthoney's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 396 Mass. 818 (1986); Milligan v. Tibbetts Eng'g Corp., 391 Mass. 364 (1984); Raffel v. Perley, 14 Mass. App. Ct. 242 (1982), the courts of this Commonwealth have focused their inquiry on whether the acts alleged to have caused injury were performed with respect to "improvement to real estate." See Anthony's Pier Four, Inc., supra at 823 n. 8; Milligan, supra at 366-368; Raffel, supra at 243-245.
Because "the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible of the quality control standards of the factory" (emphasis supplied), Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, *696 1386 (La. 1978), we think that the Legislature, by enacting § 2B, meant to protect providers of "individual expertise" in the business of designing, planning, constructing, and administering improvements to real estate. We reiterate that § 2B was intended not to apply to mere suppliers of standardized products, but only to the kinds of economic actors who perform acts of "individual expertise" akin to those commonly thought to be performed by architects and contractors  that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property.
Federal Pacific does not claim to have rendered any such particularized services with respect to design or construction of the building which burned. Thus, it clearly falls outside that class of economic actors which § 2B was intended to protect. In this regard, however, Federal Pacific argues that, because it designed, manufactured, and supplied a component which became affixed to real property, it was involved sufficiently in acts relating to an "improvement to real property" for us to hold that the Legislature intended it to benefit from the protection of § 2B. We disagree.
To begin, we note that "[t]he statute does not define `improvement,'" Raffel, supra at 243, and "[t]he legislative history of G.L.c. 260, § 2B, does not indicate precisely what the Legislature meant the term to encompass." Milligan, supra at 366. Federal Pacific invites us to make the scope of § 2B dependent on the common law of "fixtures." But § 2B makes no reference to "fixtures," nor does it appear that the Legislature intended, by its choice of the common term "improvement," to subsume that tangle of highly technical meanings, often distinct in diverse legal contexts, which is the law of fixtures. We align ourselves with "[t]he overwhelming majority of courts [which] have eschewed a rigid fixture analysis...." Heller, The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need for Amendment, 34 Cath. U.L. Rev. 919, 932 (1985).[11]
*697 Federal Pacific also argues that it should be protected by § 2B because, when incorporated into the building that was burned, its circuit breaker panel constituted an "improvement" within the definition of that term which appears in Webster's Third New Int'l Dictionary 1138 (1971).[12] Admittedly, we have said that it is not "out of place" to consider Webster's definition, Milligan, supra at 368. Accord Raffel, supra at 245. See also Anthony's Pier Four, Inc., supra at 823 n. 8. In none of those cases, however, was the defendants' status as a protected actor in doubt. Where the actor is clearly within the statute, as an architect or a construction engineer, the use of a broad definition such as Webster's is apt to give full scope to the remedial purposes of § 2B when divining whether the allegedly tortious act is also within the statute. Here, however, we are urged to use that definition for a different purpose  to decide which actors were intended to be comprehended by § 2B. The utility of the definition is doubtful in this context.
For example, if a piece of metal sculpture were welded to an exposed girder in a building, it certainly could be characterized as "a permanent addition to or betterment of" the property, one "enhanc[ing] its capital value," one "involv[ing] the expenditure of labor or money," one "designed to make the property more ... valuable," and one clearly "distinguish[able] from ordinary repairs." But would that tell us whether, or to what extent, the sculptor had been involved in the protected activity of "improvement to real property?" We *698 think not. If he produced the sculpture on commission by the developer to specifications provided in part by the architect and the engineer, we might conclude that he is protected by § 2B; but if he mass-produced the sculpture and sold it for use in a variety of contexts, or for incorporation into any building, we would conclude that he had been involved merely in the activity of producing and selling a fungible commodity, and not in the activity of improving real estate.
Thus, the fact that a producer's product may be usable by persons involved in protected acts tells us nothing about whether the producer's activity is protected, even though the product may fit within Webster's definition of an "improvement." That the use involves affixation to real property is likewise of no consequence, nor is the permanence of the fixation.
We are led by our analysis to agree with the plaintiffs, that Federal Pacific can best be described as a producer and seller of "goods,"[13] and the limits of its liability are governed by G.L.c. 106, § 2-318, not by § 2B. To be sure, the goods sold were usable in what became an improvement to real property, i.e., construction of the building, but the activity of designing, producing, and marketing those goods was no more involved in the protected activity of improving real property than would be Sert Jackson's activity of designing hammers, should the latter undertake to do so. Thus, we conclude that the Legislature intended tort actions arising from such activity to be governed by provisions of the Uniform Commercial Code[14] and not by § 2B.
This conclusion is further supported by our realization that, when § 2B was enacted in 1968, the liability of manufacturers and suppliers for injuries caused by the failures of their products was already encompassed to a certain extent within the General *699 Laws. See G.L.c. 106, §§ 2-314 and 2-318 (implied warranty of merchantability actionable in limited circumstances, absent privity of contract).[15] Actions based upon these laws were also governed by an existing statute of limitations. See G.L.c. 106, § 2-725 (1984 ed.). We assume, of course, that the Legislature was aware of these provisions of the Uniform Commercial Code when it enacted § 2B. See Hadley v. Amherst, 372 Mass. 46, 51 (1977). We are mindful, as well, that we cannot construe § 2B to have repealed, or superseded, these provisions, even in part, unless we find in § 2B "express words" or a "clear implication" to that effect. Cohen v. Price, 273 Mass. 303, 309 (1930). We find neither. Both reported questions are answered, "No," and the judgments of dismissal are affirmed.
So ordered.
NOTES
[1] George P. Dighton and Christopher Dighton.
[2] General Electric Company, Kaiser Aluminum and Chemical Corp., Leviton Manufacturing Co., Inc., and Arvin Industries, Inc.
[3] Leslie W. Abbott, administratrix of the estate of James Abbott, and Richard Stafford, administrator of the estate of Casandra Chiminello, vs. Federal Pacific Electric Company; Sert, Jackson & Associates, Incorporated, & others, third-party defendants.
[4] General Laws c. 260, § 2B, inserted by St. 1968, c. 612, and amended by St. 1973, c. 777, § 2, reads as follows:

"Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration."
The statute was further amended through St. 1984, c. 484, § 53, in ways not material to this case. No party disputes that the plaintiffs brought their actions "within three years next after the cause of action accrue[d]." At issue is the protective scope of the proviso which precludes recovery where actions are "commenced more than six years after the performance or furnishing" of designated services.
[5] See note 2, supra. Kaiser Aluminum and Chemical Corp. has submitted a brief.
[6] The plaintiffs allege that Federal Pacific was not only negligent in the manufacture of its product but also in breach of warranty. However, any claim for breach of warranty pursuant to G.L.c. 106, § 2-314 (1984 ed.), states a cause of action which sounds, like negligence, in tort and not in contract. Wolfe v. Ford Motor Co., 386 Mass. 95, 98 (1982). Back v. Wickes Corp., 375 Mass. 633, 640 (1978).
[7] The relevant language of exemption in G.L.c. 258, § 4, is: "The provisions of this section shall not apply to such claims as may be asserted by third-party complaint, cross-claim or counterclaim."
[8] Federal Pacific also claims that the judge erred in permitting Sert Jackson to benefit from § 2B because "it is unclear if c. 260 Section 2B is even, generally, founded upon a valid state or public interest as the statute may encourage a builder or architect to perform in a less than workmanlike manner, secure in the knowledge that he will be immune from liability after the passage of six years." Were we inclined to read between the lines of this cryptic comment, we might infer a challenge to the validity of § 2B under the due process clause of the Fourteenth Amendment. Because this question is inadequately argued in Federal Pacific's brief, we will not address it. Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We note, however, that we have held that § 2B does not violate Federal guarantees to due process. Klein, supra at 707-711.
[9] The equal protection arguments raised by Federal Pacific were fully aired and answered in Klein. Federal Pacific merely lists a number of bases upon which we held that the Legislature might conceivably have made a rational choice to protect a limited class of defendants; then it asserts that, because those particular bases apply equally to it, its situation is wholly indistinguishable from that of protected defendants. Federal Pacific ignores those bases alluded to in Klein which do not apply to it, e.g., the difficulties arising where "[a]rchitectural plans may have been discarded, [or] copies of building codes in force at the time of construction may no longer be in existence." Klein, supra at 709-710. And it ignores the distinction drawn in Klein between the situations of builders and suppliers "because they work under dissimilar conditions." Id. at 716. We see no reason to reconsider our holding on the constitutional question determined by Klein.
[10] The legislative history of § 2B is replete with references to classes of actors, such as architects, engineers, contractors, and surveyors. See 1967 House Doc. No. 2603; 1967 House Doc. No. 4815; Report of the Legislative Research Council Relative to a Statute of Limitations for Malpractice Against Architects, Engineers and Surveyors, 1968 Senate Doc. No. 1050; 1968 Senate Doc. No. 339. None of these sources refers at all to problems of repose encountered by manufacturers or suppliers of construction components, although the problems anticipated by architects and engineers were understood to result from the decline of the "privity" doctrine. See Klein, supra at 708 n. 7; 1968 Senate Doc. No. 1050, at 16-17. However, the relevance of these sources is doubtful. "[W]here the language of the statute is plain and unambiguous, ... Legislative history is not ordinarily a proper source of construction." Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977). It is clear from the language of the statute, and our decisions, that § 2B does not apply to materialmen and suppliers. Any ambiguity that may arise in the application of § 2B arises only from the question whether a party acted as a materialman or supplier or as an architect, engineer, contractor, or surveyor.
[11] The plaintiffs argue that the test should be that which the judge applied, one which asks whether the product alleged to have caused harm was permanently affixed to real property. This distinction gives rise to problems of line-drawing analogous to those encountered with respect to fixture analysis. For example, a circuit breaker panel may be intended by the installer to be as "permanent" as a window or a shingle or a length of electrical wiring. However, like a window which breaks, or a shingle that wears out, or a wire that "shorts," a circuit breaker panel is replaceable if need be; and, in that sense, none of these can be called "permanent" in fact. Because we construe the scope of § 2B to turn on questions of fact not at issue here, we also reject the argument advanced by Kaiser Aluminum that summary judgment was granted prematurely in this case.
[12] Webster's defines "improvement" as: "[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."
[13] It is indisputable that, at the moment when Federal Pacific's circuit breaker panel was "identified" to its contract of sale for use in the subject building, that product was "movable" and thus an item of commercial "goods" within the meaning of the Uniform Commercial Code. See G.L.c. 106, § 2-105 (l) (1984 ed.).
[14] See note 6, supra.
[15] Section 2-318 of c. 106 was first amended in 1971 to abolish entirely the requirement of privity of contract. See St. 1971, c. 670, § 1. That amendment applies only to sales made on or after this effective date. Id. at § 2. We express no opinion as to whether the plaintiffs' actions for breach of warranty, if not barred by § 2B, may nonetheless be barred by the privity requirements stated in the original version of § 2-318. See St. 1957, c. 765, § 1