**David SNOW, Linda Snow, Jason Snow and Kevin Snow, Plaintiffs,**

v.

**HARNISCHFEGER CORPORATION, Defendant.**

Civ. A. No. 90–13096–WD.

United States District Court,
D. Massachusetts.

April 20, 1993.

---

Walter Costello, Costello, Barrett & Gonthier, PC, Salem, MA, for plaintiffs.

Richard P. Campbell, David M. Rogers, Campbell & Associates, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This litigation began in December, 1990, when David Snow ("Snow"), Linda Snow, Jason Snow, and Kevin Snow brought suit in Essex Superior Court, from which defendant Harnischfeger removed the case to this court under 28 U.S.C. § 1446. Snow, an electrician, alleges he was injured by a Harnischfeger Corp. crane at a Refuse Energy Systems Company ("RESCO") trash-to-energy plant in Saugus, Massachusetts. Harnischfeger seeks summary judgment against Snow, arguing that a Massachusetts statute of repose, M.G.L. c. 260, § 2B, applies to bar this action against a person who made an improvement to real property. I agree and will consequently grant the defendant's motion.

### I

In assessing Harnischfeger's motion for summary judgment, all of "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Given that vantage, the facts in the light most favorable to plaintiffs are as follows:

On December 29, 1987, Snow, an employee of RESCO, worked from a crane's support trolley to repair an overhead lighting problem at the company's Saugus plant. After finishing a portion of his work, Snow and a co-worker came down off the trolley and onto an adjoining catwalk (which served as the service platform to the crane).[1] Both men thought they saw smoke coming out of a trash hopper. Better to investigate, "Snow leaned over the [catwalk] railing and placed his hand on the [crane's] rail to steady himself."[2] Meanwhile his co-worker mistakenly gave the "all clear" sign to the crane opera-

---

1. Harnischfeger's Response to Snow's Request for Admissions, Response 10.

2. Plaintiff's Pretrial Memorandum at 4.

tor. When the operator moved the crane, its trolley came down the rail over Snow's right hand, severing three fingers and a portion of his palm.

Snow alleges that Harnischfeger's design of the crane and its trolley was negligent: the trolley wheels should have been equipped with wheel guards; the trolley should have been equipped with an audible or visual warning system; the trolley should have been provided with a "proper lockout system" (which would have required both Snow and his co-worker to unlock the trolley before it would run).

Harnischfeger argues that even if Snow's allegations of negligence were correct, his claims would be barred by the applicable Massachusetts statute of repose. The RESCO plant and its two overhead cranes were constructed in 1973–75, and the plant opened for business in 1975. The cranes, Harnischfeger alleges, were improvements to real property, bringing their manufacturer within the protection of c. 260, § 2B, which provides:

> Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.

Because the plant and its cranes were opened to use in 1975, and Snow brought his action in 1990, Harnischfeger asserts Snow's cause is barred by Massachusetts law.

In opposition, Snow contends that Harnischfeger is not a company charged with the "design, planning, construction or general administration" of real property improvements; and that the crane RESCO purchased was not an "improvement" to RESCO's real property.[3] By answering the second question first, one can most efficiently answer the question whether Harnischfeger is within c. 260, § 2B's protected class.

## II

Harnischfeger asserts, without contradiction, that between March, 1973 and June, 1974, it worked with an engineering company employed by RESCO to design and assemble the plant's cranes.

> The components of the crane which were custom designed were: (a) the grapple buckets, (b) the length and diameter of wire rope, (c) the hoist drum length and diameter, (d) the gear reducers, (e) the motors (electric), (f) the sizes of the control components, (g) the trolley spread, (h) the electrical conductor system, (i) the operator's cab, (j) the bridge girder sections, (k) the bridge drives and speeds, ($l$) the trolley drives and speeds, (m) the size of electrical conductors, (n) the bridge and trolley wheel size and types, (o) the bridge rails, and (p) the crane electrical control systems and electrical protection panels. [Toth Affidavit at ¶ 5.]

Harnischfeger's Memorandum in Support of Summary Judgment at 4.[4] The cranes load

---

3. Snow also argues that the parties dispute material issues of fact; but these material issues turn out to be merely arguments about how to apply law to the established facts (e.g., whether Harnischfeger is in the "construction business" for purposes of c. 260, § 2B when it manufactures cranes to be installed in buildings). *See* Snow's Memorandum in Opposition to Summary Judgment at 7.

4. Snow asserts that the trolley provided by Harnischfeger for the RESCO crane was originally designed for a Florida purchaser, and merely adapted or sent along to RESCO. First, even if part of an improvement is mass-produced, that does not make the entire improvement stand

outside the statute of repose. Second, it is not self-evident that even if the trolley constituted the entire item at issue here, that it would advance Snow's cause to assert it was custom-designed for one purchaser, and then sold, at the last minute, to another. The trolley remains an item built from *"individual expertise* not susceptible of the quality control standards of the factory." *Dighton v. Federal Pacific Electric Co.*, 399 Mass. 687, 695, 506 N.E.2d 509 (citation and internal quotation marks omitted), *cert. den.*, 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987). In any event, that is not this case, because the item at issue here is the entire Harnischfeger crane, including bridge girders (spanning the length of

refuse into feed hoppers, and are integral to the plant's conversion of trash into energy.

There exists a mini-jurisprudence of what constitutes an improvement to real property sufficient to bring the improver within a state's statute of repose; and a subset of cases even treats Harnischfeger and its cranes in particular. The Supreme Judicial Court, in construing c. 260, § 2B, has noted its holding, in another context, that "[t]he word 'improvements' is of broad signification," *Milligan v. Tibbetts Engineering Corp.*, 391 Mass. 364, 366, 461 N.E.2d 808 (1984) (citation omitted); and stated that the words of the Massachusetts statute of repose are to be construed according to their "usual and natural meaning." *Klein v. Catalano*, 386 Mass. 701, 705, 437 N.E.2d 514 (1982) (citation omitted). In holding that the construction of a dead-end road was an improvement to real property within c. 260, § 2B, the SJC adduced the definition of "improvement" in Webster's Third New Int'l Dictionary 1138 (1971): "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Milligan*, 391 Mass. at 368, 461 N.E.2d 808.

Consistent with the SJC's plain meaning approach to c. 260, § 2B, Massachusetts courts have held that designers, constructors, or planners a) of bleachers adapted for a skating rink,[5] b) of an electrical distribution panel for an electric plant,[6] c) of aluminum siding[7] and foam insulation[8] for a private home, d) of a prefabricated building for a transportation authority,[9] e) of a mooring system for a shipboard cocktail lounge,[10] f) of a student center and its plate glass door

panels,[11] were all actors within the protection of the State's statute of repose.

Two Massachusetts cases, both concerning electric panels, furnish by their contrasts a ready explication of the statute. In *Dighton v. Federal Pacific Electric Co.*, 399 Mass. 687, 506 N.E.2d 509 (1987), the court held that the supplier and manufacturer of a mass-produced circuit breaker panel was a seller of goods, not a designer of an item that constituted an improvement to real property within c. 260, § 2B. The Legislature, the court found, "meant to protect providers of 'individual expertise' in the business of designing, planning, constructing, and administering improvements to real estate"; the statute does not apply to "mere suppliers of standardized products" who can avail themselves of the "quality control standards of the factory," "but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors— that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property." *Id.* at 695–96, 506 N.E.2d 509 (citation and internal quotation marks omitted).

In *Parent v. Stone & Webster Engineering Corp.*, 408 Mass. 108, 111, 556 N.E.2d 1009 (1990), the court held that an engineering company which installed an electrical distribution panel at an electric plant as part of its work in the plant's coal conversion had rendered "particularized services" which "clearly involved the expenditure of labor and money, and served to make the facility productive as a power generating plant."

■ Harnischfeger's particularized service in designing and constructing the crane in-

the building), rails, a trolley, a hoisting mechanism atop the trolley, and the operator's cab.

**5.** *McDonough v. Marr Scaffolding Co.*, 412 Mass. 636, 591 N.E.2d 1079 (1992).

**6.** *Parent v. Stone & Webster Engineering Corp.*, 408 Mass. 108, 556 N.E.2d 1009 (1990).

**7.** *Salinsky v. Perma–Home Corp.*, 15 Mass.App.Ct. 193, 443 N.E.2d 1362, app. den., 388 Mass. 1105, 448 N.E.2d 766 (1983).

**8.** *Conley v. Scott Products, Inc.*, 401 Mass. 645, 518 N.E.2d 849 (1988).

**9.** *Cournoyer v. Massachusetts Bay Transp. Auth.*, 744 F.2d 208 (1st Cir.1984).

**10.** *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 489 N.E.2d 172 (1986).

**11.** *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982).

stalled at the RESCO plant makes it an actor within the protection of the Massachusetts statute of repose. Harnischfeger's work is not similar to the materialman's in *Dighton* nor to that of others excluded from the compass of the statute. *See, e.g., Raffel v. Perley,* 14 Mass.App.Ct. 242, 437 N.E.2d 1082 (1982) (survey plans marking property off into individual lots do not constitute an improvement within c. 260, § 2B). Rather, Harnischfeger's efforts here more closely approximate those of Stone and Webster in *Parent.*

In opposition to this conclusion, Snow makes six points in chief. First, he cites *McCalla v. Harnischfeger Corp.,* 215 N.J.Super. 160, 521 A.2d 851, *certif. den.,* 108 N.J. 219, 528 A.2d 36 (1987), in which the New Jersey Superior Court's Appellate Division held that a Harnischfeger crane installed in an iron foundry was not an improvement to real property within that state's statute of repose. The court drew its analysis from various New Jersey tax cases treating the meaning of the term "fixture," and found that, consistent with those definitions, the crane was not a fixture, but merely a piece of "production machinery." *Id.* 215 N.J.Super. at 169, 521 A.2d 851. Without arguing against the persuasiveness of the New Jersey case, Harnischfeger provides a counter that goes at least to the weight of authority, and cites three cases which hold its cranes *are* "improvements" as defined by various statutes of repose.[12]

For its part, the Massachusetts Supreme Judicial Court has specifically rejected the reasoning which provides the basis for the New Jersey court's holding.

> [Plaintiff] invites us to make the scope of § 2B dependent on the common law of "fixtures." But § 2B makes no reference to "fixtures," nor does it appear that the Legislature intended, by its choice of the common term "improvement," to subsume

that tangle of highly technical meanings, often distinct in diverse legal contexts, which is the law of fixtures. We align ourselves with "[t]he overwhelming majority of courts [which] have eschewed a rigid fixture analysis...." Heller, The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need for Amendment, 34 Cath.U.L.Rev. 919, 932 (1985).

*Dighton,* 399 Mass. at 696, 506 N.E.2d 509 (footnote omitted).

Second, the Harnischfeger crane, Snow maintains, is removable; therefore, since it is not "permanent," it is without the Massachusetts statute.[13] Of course, that an item can be removed or replaced hardly means it cannot constitute an improvement. Aluminum siding can be removed; insulation can be replaced; a roof can be rebuilt; a chimney can be torn out and refashioned. Snow's argument was expressly rejected by the Supreme Judicial Court in *McDonough,* 412 Mass. at 640, 591 N.E.2d 1079 (plaintiff "argued that the bleachers could not be classified as a real property improvement, since they are not 'permanent' structures, but rather may be disassembled and removed from the rink").

Third, Snow claims that since Harnischfeger has manufactured 29,000 cranes, it cannot, as a matter of law, be a designer of the sort protected by c. 260, § 2B. However, Harnischfeger's 28,999 other cranes are not at issue in this case, and evidence on their mode of manufacture, or whether they were designed for particular purchasers would not be material. As to this crane, uncontradicted record evidence establishes it was designed and fitted to meet the specific requirements of the RESCO plant, as noted above. Further, that a company engaged in design designs many buildings, or designs many improvements to real property, does not determine whether the designer is within the pro-

---

**12.** *Miller v. Consolidated Aluminum Corp.,* 729 F.Supp. 1154 (S.D.Ohio 1990); *Hall v. Harnischfeger Corp.,* 785 F.Supp. 675 (N.D.Ohio 1991); *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448 (Minn.1988). *See also Witham v. Whiting Corp.,* 975 F.Supp. 1342 (7th Cir.1992) (applying Illinois limitations statute to manufacturer which installed hoist crane in steel plant).

**13.** "The fact that the trolleys of the overhead cranes were replaced in 1990, negates the defendant's argument that the overhead cranes and trolleys are permanent fixtures." Snow's Memorandum in Opposition to Summary Judgment at 5.

tected class. The purpose of the Massachusetts statute is not merely to protect experimental designs; its rationale "is hardly dependent on some minimum level of creativity on the part of the building designer." *Cournoyer v. Massachusetts Bay Transp. Auth.*, 744 F.2d 208, 211 (1st Cir.1984) (applying statute to extinguish claim against manufacturer of prefabricated building).

Fourth, Snow argues that a crane such as Harnischfeger's is not the only means of moving trash and thereby enhancing the value of the plant; and fifth, that since Harnischfeger did not itself install the crane at the plant, it is not part of the class of actors protected by the statute of repose.

■ That other design solutions to the problem of moving and sorting trash in the RESCO plant might be better, or more economical, or less labor intensive, or that other machines or crews of workers could effectively do the labor of the Harnischfeger crane is irrelevant. The question is whether the crane was an improvement to real property which enhanced the property's value; not whether other improvements might be made which would yield similar—or even greater—increases in value, but by other means. The material fact that the crane increased the plant's value to some degree is not in dispute here.

■ Harnischfeger need not have itself installed the crane in the RESCO plant to benefit from the statute. Harnischfeger's activity will be protected if it custom-designed an improvement to real property; in other words, if it manufactured its crane to the particular specifications of the RESCO plant, and thereby rendered a "particular improvement[] to [a] particular piece[] of real property." *Dighton*, 399 Mass. at 696, 506 N.E.2d 509. In *Dighton*, the Supreme Judicial Court provided a brief comment on the class of actors protected by the statute:

> ... if a piece of metal sculpture were welded to an exposed girder in a building, it certainly could be characterized as "a permanent addition to or betterment of" the property, one "enhanc[ing] its capital value".... But would that tell us whether, or to what extent, the sculptor had been involved in the protected *activity* of "improvement to real property"? We think not. If he produced the sculpture on commission by the developer to specifications provided in part by the architect and the engineer, we might conclude that he is protected by § 2B; but if he mass-produced the sculpture and sold it for use in a variety of contexts, or for incorporation into any building, we would conclude that he had been involved merely in the activity of producing and selling a fungible commodity, and not in the activity of improving real estate.

399 Mass. at 697–98, 506 N.E.2d 509.

Harnischfeger, as the RESCO plant's crane designer and manufacturer, producing a crane to meet "specifications provided in part by the architect and engineer," fits even more securely within section 2B's protected class than the sculptor in example one, above.[14]

---

**14.** In its Supplemental Memorandum, Harnischfeger refers to a recently decided case in the Western District of Missouri, *Hayslett v. Harnischfeger Corp.*, 815 F.Supp. 1294 (W.D.Mo. 1993). The district court, in applying the Missouri statute of repose (closely similar to Massachusetts' statute), noted that under applicable state law,

> [A] defendant such as Harnischfeger may make "two separate and distinct arguments" that it is covered by the statute. "First, a manufacturer may claim that its activity in fabricating, assembling or manufacturing building materials or a component part incorporated within the real property in the construction of the improvement 'is, [sic] performing or furnishing, ... construction, including ... construction services, of the improvement.'" The second, and alternative, argument available to a

defendant such as Harnischfeger is that "it performed or furnished design, planning or engineering devices by reason of the design and engineering activities involved in developing its product."

*Hayslett* at 1297.

While I find the Missouri district court's reasoning in *Hayslett* unexceptionable, *Hayslett* adds only to the weight of authority already cited above, in footnote 12. Moreover, Massachusetts courts have not now, nor may they ever, adopt Missouri's two prong test for applying its statute of repose. (I note, however, that Snow has sought to apply to Harnischfeger a very narrow version of the first prong of the Missouri test without giving Harnischfeger the benefit of the second prong. That is, Snow argues, in essence, that if Harnischfeger did not custom design and install materials critical to the building housing

Finally, Snow asserts that Harnischfeger did not "render[ ] any particularized services in the design or construction of the RESCO building." Snow's Supplemental Memorandum in Opposition to Summary Judgment at 7. However, the Massachusetts statute of repose treats improvements to real property, not to *buildings* alone. Massachusetts courts have not required that, to benefit from the protections of c. 260, § 2B, an actor must have designed or constructed a building, or even part of a building. *See, e.g., Crandall Dry Dock*, 396 Mass. at 823 n. 8, 489 N.E.2d 172 (without deciding whether ship itself was improvement to real property, "the mooring system made possible the placement of the ship immediately adjacent to the restaurant so that it could be used as a cocktail lounge, thereby enhancing the capital value of the restaurant"); *Tibbetts Engineering*, 391 Mass. 364, 461 N.E.2d 808 (design and construction of dead end road). It is not pertinent that the "improvement" at issue is in part a machine; the Supreme Judicial Court has not held that there is a taxonomy to be applied to determine whether a product is an improvement, but rather it has applied a functional analysis, as shown in *Crandall's Dry Dock, Milligan,* and *McDonough.*

In the language Massachusetts courts have used in construing c. 260, § 2B, the Harnischfeger crane is clearly a "permanent addition to or betterment of" the RESCO plant; it "enhances [the plant's] capital value"; it "involves the expenditure of labor or money"; it is "designed to make the property more useful or valuable"; and it is an item plainly

"distinguished from ordinary repairs." *Milligan*, 391 Mass. at 368, 461 N.E.2d 808, *Raffel*, 14 Mass.App.Ct. at 245, 437 N.E.2d 1082; *see also Crandall's Dry Dock*, 396 Mass. at 823 n. 8, 489 N.E.2d 172. Further, in fashioning the crane for RESCO, Harnischfeger's individual expertise was engaged in the protected *activity* of designing, planning, or constructing an "improvement to real property." *Parent*, 408 Mass. at 111, 556 N.E.2d 1009 (engineering company which installed electrical distribution panel within statute's grant of immunity from suit); *McDonough*, 412 Mass. at 644, 591 N.E.2d 1079 (supplier which "designed the bleacher [seating] units specifically for the rink" within statute).[15]

## III

Snow brought this action more than six years after Harnischfeger's crane was built and opened for use in the RESCO plant. Therefore, his action is extinguished by the Massachusetts statute of repose. Harnischfeger's motion for summary judgment is hereby ALLOWED.

---

the RESCO plant, it is not a protected actor for purposes of c. 260, § 2B. If it did not custom design some necessary part of the building—walls, floor, foundation, roof—; or if it did not itself install the product of its manufacture, then, Snow seems to contend, Harnischfeger is a mere *materialman or supplier.* But, as noted above, that cramped reading of section 2B is not a persuasive interpretation of Massachusetts law. Snow would like to require Harnischfeger to be a general administrator of a real property improvement; but the statute also provides protection for designers and planners of such improvements. Harnischfeger falls in this latter category.)

15. Of course, as I have here several times emphasized, "the fact that a producer's *product* may be usable by persons involved in protected acts

tells us nothing about whether the producer's *activity* is protected...." *Dighton*, 399 Mass. at 698, 506 N.E.2d 509 (emphasis added). If an architect had designed the RESCO plant, his design calling for a mass-produced crane to be permanently installed, whereas the architect's activity in designating and ordering the crane would be protected, the manufacturer's in producing it would probably not be protected. In the present case, however, the manufacturer worked closely with plant engineers in designing the crane to meet the plant's particular specifications. Harnischfeger's role as manufacturer is akin to that of Marr Scaffolding in *McDonough* (bleachers), an actor whose activity was within the statute.