UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1489

DAVID SNOW, ET AL.,

Plaintiffs, Appellants,

v.

HARNISCHFEGER CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella and Stahl, Circuit Judges,

and DiClerico,* District Judge.

Walter A. Costello, Jr. with whom Julie M. Conway and Costello,

Barrett and Gonthier, P.C. were on brief for appellants.

David M. Rogers with whom Richard P. Campbell and Campbell &

Associates, P.C. were on brief for appellee.

December 29, 1993

*Of the District of New Hampshire, sitting by designation.

DiClerico, District Judge. Plaintiffs David Snow,
DiClerico, District Judge.

Linda Snow, Jason Snow and Kevin Snow brought an action

against defendant Harnischfeger Corporation

("Harnischfeger") alleging defective design and negligence

after the trolley wheel of an Harnischfeger crane injured

David Snow. Harnischfeger moved for summary judgment,

claiming the Massachusetts real estate statute of repose

barred the action. The district court agreed and granted

summary judgment. We affirm.

I

BACKGROUND

In March 1973, Rust Engineering Company ("Rust"),

an engineering and construction firm acting as agent for

Refuse Energy Systems Company ("RESCO"), engaged

Harnischfeger to assist in the design and manufacture of two

thirteen-ton overhead cranes for use at RESCO's Saugus,

Massachusetts trash-to-energy plant.1 The cranes are used

1Harnischfeger has designed and manufactured overhead cranes
since 1906 and has built more than 24,000 overhead trolley
cranes. Harnischfeger customizes each overhead trolley
crane it manufactures. Overhead cranes such as those built
by Harnischfeger are generally considered heavy-duty
machinery for specific production purposes and used by many
industries to lift and move heavy objects.

-2-
2

to move trash into trash feed hoppers where the trash is

burned and steam is generated and converted into

electricity. Rust incorporated the cranes into the plant's

buildings as part of the original construction.

Harnischfeger was not involved in the design or construction

of the RESCO facility, nor did Harnischfeger install the

cranes.

On December 29, 1987, the trolley wheel of one of

the overhead cranes severed David Snow's third, fourth and

fifth finger and a portion of his right hand. At the time,

Snow was working at the Saugus facility. The Snow family

brought an action in Essex Superior Court, Commonwealth of

Massachusetts, alleging the crane was unsafe due to

Harnischfeger's failure to equip the trolley with wheel

guards and rail sweeps, automatic audio or visual movement

alarms, a proper lock-out system or kill switch, and

Harnischfeger's failure to warn of inherent risks.2

Harnischfeger removed the action to the district court

pursuant to 28 U.S.C. 1446, and moved for summary judgment

2In their amended complaint, the Snows charge Harnischfeger
with defective design, negligence, breach of express
warranty and breach of the implied warranty of
merchantability.

-3-
3

under the Massachusetts real estate statute of repose

("statute").

The statute, Mass. Gen. Laws Ann. ch. 260, 2B

(West 1992) ("M.G.L. c. 260, 2B"), provides:

Action [sic] of tort for damages arising
out of any deficiency or neglect in the
design, planning, construction or
general administration of an improvement
to real property . . . shall be
commenced only within three years next
after the cause of action accrues;
provided, however, that in no event
shall such actions be commenced more
than six years after the earlier of the
dates of: (1) the opening of the
improvement to use; or (2) substantial
completion of the improvement and the
taking of possession for occupancy by
the owner.3

Id.4 The district court found Harnischfeger was included

in the class of actors protected under the statute and

granted the summary judgment motion.5

3Massachusetts courts have construed the statute to apply to
implied breach of warranty claims where the underlying cause
of action is the same as the tort claim. Klein v. Catalano,

437 N.E.2d 514, 526 & n.19 (Mass. 1982); see also Anthony's

Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 489

N.E.2d 172, 175 (Mass. 1986).

4M.G.L. c. 260, 2B was last revised in 1984. Id.

5The district court barred the Snows' action noting the
RESCO plant became operational in 1975 and the Snows did not
institute their action until 1990. In 1986, Harnischfeger
designed two replacement trolleys. The Snows do not argue
that we should measure the application of the statute from
the date Harnischfeger designed the replacement trolleys.

-4-
4

On appeal the Snows argue (1) the district court

improperly granted summary judgment where genuine issues of

material fact remained; (2) the district court impermissibly

extended repose to the manufacturer of a machine thereby

changing Massachusetts' product liability law; (3) the

district court improperly found Harnischfeger was a

protected actor within the meaning of M.G.L. c. 260, 2B;

and (4) questions of local law are central to the

disposition of the appeal and should be certified to the

Massachusetts Supreme Judicial Court ("SJC").

II

DISCUSSION

Standard of Review

"We review a grant of summary judgment de novo,

using the same criteria incumbent upon the district court."

Gaskell v. Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir.

1993) (citing Vanhaaren v. State Farm Mut. Auto. Ins. Co.,

989 F.2d 1, 3 (1st Cir. 1993); High Voltage Eng'g Corp. v.

Federal Ins. Co., 981 F.2d 596, 598 (1st Cir. 1992); Pedraza

v. Shell Oil Co., 942 F.2d 48, 50 (1st Cir. 1991), cert.

denied, U.S. , 112 S. Ct. 993 (1992). The role of

summary judgment is "to pierce the boilerplate of the

-5-
5

pleadings and assay the parties' proof in order to determine

whether trial is actually required." Wynne v. Tufts Univ.

Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992). It is

appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The burden is on the moving party to establish the lack of a

genuine, material factual issue, Finn v. Consolidated Rail

Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must

view the record in the light most favorable to the

nonmovant, according the nonmovant all beneficial inferences

discernable from the evidence. Mesnick v. General Elec.

Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan

v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied,

U.S. , 112 S. Ct. 2965 (1992); Caputo v. Boston

Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). Once the

defendant has made a properly supported motion for summary

judgment, however, the plaintiffs "may not rest upon mere

allegation or denials of [their] pleading, but must set

forth specific facts showing there is a genuine issue for

-6-
6

trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986) (citing Fed. R. Civ. P. 56(e)).

Issues of Fact

According to the Snows, four genuine issues of

material fact remain in dispute, making summary judgment

inappropriate. We have reviewed their contentions and find

them to be without merit.

The Snows first argue there is a genuine issue of

fact as to whether Harnischfeger is in the construction

business.6 The Snows do not dispute Harnischfeger designed

and manufactured the crane. Instead, the Snows assert that

these activities are not sufficient for a court to find that

Harnischfeger is involved in the construction industry and

6The Snows assert:

[t]he defendant claimed that because it
manufactured an overhead crane that
became affixed to real property, it was
involved in the construction business.
The plaintiffs contend that the
defendant's design and manufacture of an
overhead crane which is housed in a
structure on real property, does not
mean the defendant was involved in the
type of construction contemplated by
M.G.L. c. 260 2B.

Brief of the Plaintiffs-Appellants at 5-6.

-7-
7

that such involvement is necessary to bring Harnischfeger

within M.G.L. c. 260, 2B. Harnischfeger contends M.G.L.

c. 260, 2B provides protection "`to architects, engineers,

contractors and others involved in the design, planning,

construction or general administration of improvements to

real property'" and suggests it deserves repose as an

"`engineer' or `other' involved in the `design,' `planning'

and `construction' of the overhead crane." Brief of

Defendant-Appellee at 10-11 (alteration in original)

(quoting Klein, 437 N.E.2d at 523).

Whether a defendant's activities fall within the

statute is a question of law. See, e.g., McDonough v. Marr

Scaffolding Co., 591 N.E.2d 1079, 1081 (Mass. 1992) (court

appropriately granted summary judgment after concluding

defendant's actions were construction activity contemplated

by M.G.L. c. 260, 2B). Moreover, as Harnischfeger notes,

the statute does not limit its protection solely to those

involved in the actual construction of improvements to real

property. Harnischfeger may be a protected actor even

without being involved in the construction business. As the

district court aptly stated, the Snows' contention is

"merely [an argument] about how to apply law to the

established facts." Snow v. Harnischfeger, 823 F. Supp. 22,

-8-
8

24 (D. Mass. 1993). To the extent there is a dispute, it is

immaterial to the disposition of the action.

The Snows next argue there is a genuine issue of

fact as to whether the overhead crane is a unique product.

They argue the crane, like many standard cranes, was merely

customized to fit inside a building, shed or structure.

Harnischfeger maintains that the product is unique and

custom designed for RESCO. In support Harnischfeger offers

affidavits showing the following: Harnischfeger designed,

manufactured and constructed the cranes' lifting capacity as

well as the dimensions of the major components for specific

plant and job functions; Rust supplied specifications that

were the basis of the designs including specified overhead

and wall clearances; and Harnischfeger custom designed

sixteen component parts and manufactured and assembled

virtually all the components. The Snows counter that they

have presented evidence showing the crane is a standard

design and the trolley was previously designed for sale in

Florida.

The Snows' evidence, which consists of

Harnischfeger's brochures and literature along with expert

affidavits and deposition testimony, does not create any

genuine issue of fact for trial. The brochures emphasize

-9-
9

that customers should avoid "standard" cranes and should

have Harnischfeger's experts design a crane that will

satisfy their particular needs. At best, the literature

suggests Harnischfeger has standardized the materials used

to create the crane and standardized certain components to

be mixed and matched into a final product. In addition, the

opinions of Snows' experts that the crane, as a final

product, is a basic design similar to cranes used in other

industries do not contradict Harnischfeger's evidence. A

crane can be designed for a particular location and

specialized function and still retain the essential

characteristics common to industrial cranes. Moreover, the

ability of the crane to be adopted for use by another

industry is immaterial to Harnischfeger's status as a

protected actor because the relevant inquiry involves the

motivation behind and the activity of producing the product,

not the product itself. See Dighton v. Federal Pac. Elec.

Co., 506 N.E.2d 509, 516 (Mass. 1987). Furthermore, the

deposition testimony of James Fravert, a Harnischfeger

employee, does not establish that the design of the RESCO

trolley was the same as one previously used by Harnischfeger

for sale to Brevard County, Florida. Fravert does not

testify that the design was duplicated, only that a design

-10-
10

drawing was duplicated and the duplicated drawing was

modified to create the drawing for the RESCO crane.

Lastly, the Snows raise the issue of the status of

the crane, arguing first that there is a genuine issue of

fact as to whether the crane is an improvement to real

property. Once again, however, the Snows do not dispute any

relevant facts but rather the application of law to these

facts. The parties agree as to the essential

characteristics of the crane. There is an established legal

standard defining improvements for purposes of M.G.L. c.

260, 2B as well as case law establishing when the

definition should be applied. See Milligan v. Tibbetts

Eng'g Corp., 461 N.E.2d 808, 811 (Mass. 1984) (adopting

definition found in Webster's Third International

Dictionary); see also Dighton, 506 N.E.2d at 516

(explaining when definition is useful). The Snows suggest

no disputed facts that would in any way preclude us from

applying the legal standard.

The Snows also argue there is a genuine issue of

fact as to whether the crane is a permanent fixture. The

SJC has rejected adoption of a fixture analysis to determine

applicability of the statute of repose, noting the statute

"makes no reference to `fixtures,' nor does it appear that

-11-
11

the Legislature intended, by its choice of the common term

`improvement,' to subsume that tangle of highly technical

meanings, often distinct in diverse legal contexts, which is

the law of fixtures." Dighton, 506 F.2d at 515. The fact

that a product is affixed, permanently or otherwise, neither

makes the product an improvement nor turns the producer into

a protected actor. Id. Thus, the crane's status as a

permanent fixture is immaterial to our inquiry.

Harnischfeger as a Protected Actor

The Snows further challenge the summary judgment

order by maintaining the district court acted impermissibly

and without precedent in applying the statute to

Harnischfeger, who they define as "manufacturers of a

machine." The Snows argue Harnischfeger, as a manufacturer,

is outside the class of actors M.G.L. c. 260, 2B is

designed to protect. Harnischfeger admits to having

manufactured the crane but argues a manufacturer who engages

in protected activities is entitled to repose.

The purpose of the statute is "to protect

providers of `individual expertise'" who "render

particularized services for the design and construction of

particular improvements to particular pieces of real

-12-
12

property." Id. The statute does not name a class of

protected actors, but instead extends protection to "those

who commit `any deficiency or neglect in the design,

planning, construction, or general administration of an

improvement to real property.'" Id. at 514. Certain actors

obviously fall within the statute. See id. at 516. These

actors include architects, engineers and contractors.

Klein, 437 N.E.2d at 523. The statute shields these actors

from any liability after six years as long as they were

involved in an enumerated activity with respect to an

improvement to real property. Other actors, such as

materialmen and "mere" suppliers, are outside the scope of

the statute and not entitled to its protection. Dighton,

506 N.E.2d at 514 n.10; McDonough, 591 N.E.2d at 1082.

Ambiguity in the application of M.G.L. c. 260,

2B arises when it is unclear whether a party acted as a

materialman or supplier rather than an architect, engineer,

contractor, surveyor or some other protected actor. See

Dighton, 506 N.E.2d at 514. A party is not a protected

actor when the party does not perform protected acts. See

id. at 515. Conversely, an actor such as a manufacturer or

supplier may be protected if that actor becomes more than a

"mere" supplier by engaging in protected activities.

-13-
13

McDonough, 591 N.E.2d at 1082 (manufacturer who designed

bleacher units specifically for the rink in which they were

installed by another is more than mere supplier and entitled

to benefit of statute). Thus, application of the statute is

necessarily dependent on the nature of the party's

activities.7 See Dighton, 506 N.E.2d at 516.

In Dighton, the defendant did not claim to have

provided particularized services with respect to the

improvement -- the building -- but rather claimed the

7The Snows argue that Dighton imposes a requirement upon the

court to engage in a two-step analysis to determine whether
Harnischfeger is protected under M.G.L. c. 260, 2B.
According to the Snows, Dighton requires the court to

consider whether the statute names the party as a protected
actor, i.e., an architect or engineer. If the answer is
yes, the court may determine whether the defendant engaged
in protected acts.
Dighton imposes no such test. The Dighton court

merely noted that the trial judge framed the question in
this bipartite form. 506 N.E.2d at 514. The court rejected
the bipartite formulation:

On its face, 2B defines the protected
actor largely by reference to protected
acts. The body of 2B names no class
of protected actors. Rather, its terms
extend protection to persons allegedly
responsible for acts, i.e., those who
commit "any deficiency or neglect in the
design, planning, construction, or
general administration of an improvement
to real property."

Id. Thus, the court can and must engage in an activities

analysis when the defendant's status as a protected actor is
unclear. See id.

-14-
14

benefit of the statute as a designer, manufacturer and

supplier of a component that fell within Webster's

definition of improvement.8 Id. at 515, 516. The SJC did

not reject the contention that a producer of a component may

be entitled to protection. See id. at 516; see also

McDonough, 591 N.E.2d at 1084. Instead, the SJC rejected a

formalistic inquiry and established the producer's

motivations and activities as the relevant focus of inquiry,

not the nature of the product or the ability to define the

product as an improvement or a fixture. Dighton, 506 N.E.2d

at 516.

In considering whether an actor not clearly within

the statute is entitled to repose, the court engages in a

fact-based activities analysis. See id. The court must

consider the motivation of the actor in producing the

improvement.9 Id. If the actor designed the improvement

8This definition has been adopted by the SJC where the
defendant's status as a protected actor is not in doubt.
Id. at 516.

9The SJC provides the following illustration:

[I]f a piece of metal sculpture
were welded to an exposed girder in a
building, it certainly could be
characterized as a "permanent addition
to or betterment of" the property, one
"enhanc[ing] it capital value," one
"involv[ing] the expenditure of labor or

-15-
15

for public sale or for general use, then the actor is not

protected because the actor is engaged in the activity of

creating a fungible product. See id. If, however, the

improvement is produced for a particular project and to the

specifications of an architect or an engineer, M.G.L. c.

260, 2B may protect the actor as someone engaged in the

activity of designing a particularized improvement. Id.

Like the defendant in Dighton, Harnischfeger does

not claim to have rendered particularized services with

respect to the design or construction of the RESCO facility.

Instead, Harnischfeger claims to be brought within the

money," one "designed to make the
property more . . . valuable," and one
clearly distinguish[able] from ordinary
repairs." But would that tell us
whether, or to what extent, the sculptor
had been involved in the protected
activity of "improvement to real

property?" We think not. If he
produced the sculpture on commission by
the developer to specifications provided
in part by the architect and the
engineer, we might conclude that he is
protected by 2B; but if he mass-
produced the sculpture and sold it for
use in a variety of contexts, or for
incorporation into any building, we
would conclude that he had been involved
merely in the activity of producing and
selling a fungible commodity, and not in
the activity of improving real estate.

Dighton, 506 N.E.2d at 516 (alteration in original).

-16-
16

protection of the statute by designing RESCO's cranes.

Pursuant to affidavits submitted, when designing the crane

that caused Mr. Snow's injuries, Harnischfeger's motivation

in producing the crane was to create, at the request of the

construction engineer, an essential component of the plant

building, made to the construction engineer's

specifications, for sale only to RESCO and for incorporation

only into the RESCO plant. RESCO intended the cranes to be

a permanent and integral part of the overall plant, making

the property useful. Harnischfeger was not motivated to

create a fungible crane available to a variety of buyers and

appropriate for incorporation into a number of facilities.

Harnischfeger's actions conform to those outlined by the

Dighton Court and are protected activities.10

As the plaintiffs note, "[w]hen faced with the

question of whether or not the defendant is entitled to

repose under M.G.L. c. 260 2B, the first question to be

answered is `Is the defendant a protected actor under M.G.L.

c. 260 2B?'" Brief of the Plaintiffs-Appellants at 11.

10As the Snows' experts note, a subsequent purchaser could
remove and modify the RESCO cranes for use in another
industry, although this contingency was neither Rust's nor
Harnischfeger's intention. Furthermore, we do not look at
possible future uses and are therefore unconcerned that the
crane could someday be sold to another party, or could be
incorporated into another plant.

-17-
17

Having answered affirmatively, we now state our agreement

with the trial court that the crane is an improvement to

real property within the meaning of the statute. See Snow,

823 F. Supp. at 24-25. For purposes of M.G.L. c. 260, 2B,

an improvement is

a permanent addition to or betterment of
real property that enhances its capital
value and that involves the expenditure
of labor or money and is designed to
make the property more useful or
valuable as distinguished from ordinary
repairs.

Milligan, 461 N.E.2d at 811 (quoting Raffel v. Perley, 437

N.E.2d 1082, 1085 (Mass. App. 1982)). RESCO intended the

crane to be a betterment of real property enhancing its

capital value and making the property more useful and

valuable. Therefore, Harnischfeger is entitled to the

protection afforded by M.G.L. c. 260, 2B.

Certification
Certification

Following the district court order and subsequent

appeal and shortly before oral arguments, the Snows brought

a motion asking for the first time that the following two

questions be certified to the SJC:

(1) Whether the defendant,
Harnischfeger, the manu-facturer of a
manually operated overhead crane, is a

-18-
18

member of the class M.G.L. c. 260, 2B
was designed to protect?

(2) Whether the district court acted
appropriately in using Webster's Third
International Dictionary's definition of
`improvement' in determining whether the
plaintiffs' product liability claims
were barred by M.G.L. c. 260, 2B?

The Snows had argued to the district court that Dighton was

dispositive of the issues in their case but now claim "[t]he

foregoing questions of local law are central to the

disposition of this appeal. . . . [T]he local law on this

question has not been clearly determined."11 Plaintiffs-

Appellants' Memorandum in Support of their Motion to Certify

Questions of Local Law to the Supreme Judicial Court of

Massachusetts at 2.

Certification of determinative issues is

appropriate where "it appears to the certifying court there

is no controlling precedent in the decisions of the Supreme

Judicial Court." Supreme Judicial Court Rule 1:03, 1

(1986). The SJC construed the scope of M.G.L. c. 260, 2B

in a number of cases. See, e.g., McDonough, 591 N.E.2d at

1084 (repose extends to designer of bleacher units

specifically designed for rink); Parent v. Stone & Webster,

11The Snows also acknowledged the dispositive nature of the
case law at a hearing before the district court.

-19-
19

556 N.E.2d 1009, 1011 (Mass. 1990) (repose extends to

contruction engineer who installs distribution panel);

Dighton, 506 N.E.2d at 516 (repose does not extend to

manufacturer of mass marketed circuit breaker affixed to

real property). The Snows themselves list in their motion

for certification no less than ten cases where Massachusetts

courts have determined whether a defendant is a protected

actor under M.G.L. c. 260, 2B. Massachusetts courts have

also extensively addressed when Webster's definition of

improvement is to be utilized. See Dighton, 506 N.E.2d at

516; Milligan, 461 N.E.2d at 811; Raffel, 437 N.E.2d at

1085. Thus, we are satisfied that sufficient guidance is

available and certification is inappropriate under the

circumstances of this case.

Affirmed.

-20-
20