COMMONWEALTH vs. KEITH J. LAVALLEY.

Hampshire. January 9, 1991. - July 15, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Rape. Evidence*, Fresh complaint, Consciousness of guilt, Videotape. *Practice, Criminal*, Instructions to jury.

At a rape trial, a videotape recording of a statement made by the victim shortly after the incident, admitted as fresh complaint evidence, was only cumulative in the circumstances and was not prejudicial to the defendant. [642-645]

At a criminal trial, the judge correctly instructed the jury that if they found that the defendant made false statements to the police they could consider the statements as evidence of consciousness of guilt, and the prosecutor's argument on that issue was proper. [648-650]

At a criminal trial there was no reversible error in the judge's instructions to the jury on the issue of consciousness of guilt. [650-652]

INDICTMENT found and returned in the Superior Court Department on November 9, 1988.

The case was tried before *Charles R. Alberti*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Yvonne P. Toyloy*, Committee for Public Counsel Services, for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Keith J. Lavalley, was convicted by a jury of rape and sentenced to a term of twenty years at Massachusetts Correctional Institution, Concord. The defendant appealed his conviction.[1] We transferred the appeal to this court on our own motion. The defendant

---

[1] A second conviction, of assault and battery, was placed on file and is not subject to this appeal.

claims that the judge erred in allowing the jury to view and hear a videotape recording of a statement made by the victim to the police shortly after the incident. We conclude that the use of the videotape as evidence of fresh complaint was not prejudicial to the defendant. We also reject the defendant's argument that the judge's instructions on consciousness of guilt constituted reversible error.

Evidence of the following facts was presented to the jury. On October 25, 1988, the nineteen year old victim, the defendant, and a few friends were drinking alcohol in a wooded area in Ware. The defendant and the victim eventually separated from the rest of the group and began walking up a hill. During the walk, the defendant tried to kiss the victim, but she asked him to stop. When they reached the top of the hill, the defendant forced the victim to the ground and held her down. While the victim tried to push the defendant away, he pulled her pants and underwear down to her ankles and inserted his fingers inside her vagina. The victim told him to stop. The defendant placed his hand around her neck and told her that he would kill her if she were not quiet. The victim continued to resist. At one point she told him that, if she did not return to her home soon, her mother would be concerned and would call the police. The defendant then got up from on top of the victim, and they walked back down the hill.[2]

1. *Fresh complaint.* Within a few hours of the incident, the victim told two friends, two police officers, and a physician about the alleged sexual attack. All five individuals testified as to what the victim told them. The testimony of these five witnesses was admitted as evidence of fresh complaint. Additionally, over the objection of the defendant, the judge allowed the jury to view a videotape, made on the day of the incident, recording a statement by the victim to the police describing the attack. The judge ruled that the jury could

[2]The defendant testified that it was the complainant who first kissed him, and that it was she who lowered her pants, took his hand, and placed it between her legs.

view the videotape since it was further evidence of fresh complaint.[3] The defendant argues that the videotape was prejudicial and that the judge erred in allowing it to be shown to the jury.

An out-of-court statement made by a victim of a sexual attack shortly after the incident occurred may be admissible, not as substantive evidence that the attack occurred but as corroboration of the complainant's in-court testimony. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976); *Commonwealth* v. *Ellis*, 319 Mass. 627, 629 (1946); *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898). The "fresh complaint doctrine is justified on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault . . ., and in the absence of evidence of complaint the jury might assume that none was made" (citation omitted). *Commonwealth* v. *Bailey*, *supra*. The rule in Massachusetts, unlike the rule in most jurisdictions, is that a witness may testify not only to the fact that the victim complained that she was sexually attacked, but also may relate the details of the complaint. *Id.* at 396.[4] In *Bailey*, we concluded that a jury's

---

[3]The judge's limiting instruction to the jury given before the showing of the videotape was, in part, as follows: "Ladies and gentlemen, what you are about to see is a videotape of [the victim] made at the office of the police in the Town of Ware on the evening in question. I have sanitized it to be sure that the information presented concerns only its evidential purpose. The evidential purpose here is not to replace or add to her testimony before you on the witness stand. Because that testimony is testimony that you are to take, with the live witness, and accept or reject in whole or in part as you deem appropriate. That's her testimony about what happened. What we will see is her statement to the police. Instead of someone repeating what she says, you will have an opportunity to see her and hear her say to the police what she claimed happened that night; not for its truth, in the sense of to be accepted, rejected, as to what happened, but on the doctrine of what is called, and which I instructed you, as fresh complaint."

[4]The rule in the majority of States is that a witness may testify to the fact that the victim made a complaint, but cannot testify regarding the details of the complaint. See *Aaron* v. *State*, 273 Ala. 337, 345 (1961); *Greenway* v. *State*, 626 P.2d 1060, 1061 n.4 (Alaska 1980); *Bing* v. *State*, 23 Ark. App. 19, 23-24 (1987); *People* v. *Burton*, 55 Cal. 2d 328, 351 (1961); *People* v. *Montague*, 181 Colo. 143, 145 (1973); *Fitzgerald* v.

"considerable and perhaps inordinate skepticism in rape cases" cannot be effectively counteracted by limiting the evidence of the complaint to the simple fact that it was made, *id.* at 394, and that the majority rule prohibiting details of the complaint "ask[s] the jury to draw important inferences from imperfect materials, perfect materials being at hand and in the cognizance of the witness in the box. In our opinion, nothing ought unnecessarily to be left to speculation or surmise." *Id.* at 395, quoting *The Queen* v. *Lillyman*, 2 Q.B. 167, 177-178 (1896).

In this case, the Commonwealth argues that there was no error in allowing the jury to view the videotape since it was the best evidence available to show the details of the complaint. The defendant argues that the corroborative value of

---

*United States*, 443 A.2d 1295, 1305 (D.C. 1982); *Custer* v. *State*, 159 Fla. 574, 597 (1947); *Epps* v. *State*, 216 Ga. 606, 611 (1961); *State* v. *Hall*, 88 Idaho 117, 128 (1964); *People* v. *Robinson*, 73 Ill. 2d 192, 199-200 (1978); *Woods* v. *Indiana*, 233 Ind. 320, 326 (1954); *State* v. *Grady*, 183 N.W.2d 707, 718 (Iowa 1971); *Cook* v. *Commonwealth*, 351 S.W.2d 187, 189 (Ky. 1961); *State* v. *Calor*, 585 A.2d 1385, 1387 (Me. 1991); *Cole* v. *State*, 83 Md. App. 279, 294 (1990); *People* v. *Lawson*, 34 Mich. App. 620 (1971); *Carr* v. *State*, 208 So.2d 886, 888 (Miss. 1968); *State* v. *Van Doren*, 657 S.W.2d 708, 716 (Mo. Ct. App. 1983); *State* v. *Daniels*, 222 Neb. 850, 854 (1986); *New Jersey* v. *Bethune*, 121 N.J. 137, 146-147 (1990); *State* v. *Baca*, 56 N.M. 236, 240 (1952); *People* v. *Stripling*, 162 A.D.2d 1029 (N.Y. 1990); *State* v. *Campbell*, 299 Or. 633, 642 (1985); *Commonwealth* v. *Green*, 487 Pa. 322, 328-329 (1979); *State* v. *Harrison*, 236 S.C. 246, 250 (1960); *State* v. *Twyford*, 85 S.D. 522, 527 (1971); *Vera* v. *State*, 709 S.W.2d 681, 685 (Tex. Ct. App. 1986); *Moore* v. *Commonwealth*, 222 Va. 72, 78 (1981); *State* v. *Ferguson*, 100 Wash. 2d 131, 135-136 (1983); *State* v. *Golden*, 336 S.E.2d 198, 203 (W. Va. 1985). To our knowledge only two jurisdictions other than Massachusetts permit the prosecution to use the details of the fresh complaint as a way of corroborating the victim's trial testimony. See *State* v. *Blohm*, 281 N.W.2d 651, 652 (Minn. 1979); *State* v. *Sanders*, 691 S.W.2d 566, 568 (Tenn. Crim. App. 1984). Most jurisdictions which abide by the majority rule allow details of the complaint to be admitted if the victim's testimony is impeached, see, e.g., *Saldiveri* v. *State*, 217 Md. 412, 418 (1958); *Moore* v. *Commonwealth*, *supra* at 78-79, or as part of the res gestae as substantive evidence that the attack actually occurred, see, e.g., *State* v. *Randolph*, 99 Ariz. 253, 255 (1965); *Price* v. *State*, 233 Ga. 332, 334 (1974); *State* v. *Swanson*, 228 N.W.2d 101, 103-104 (Iowa 1975). See generally 4 J. Wigmore, Evidence §§ 1138-1139 (Chadbourn rev. ed. 1972).

the videotape was outweighed by its prejudicial effect. See *Green* v. *Richmond*, 369 Mass. 47, 59-60 (1975).

"We have stated that videotapes are 'on balance, a reliable evidentiary resource'. Consequently, videotapes should be admissible as evidence if they are relevant, they provide a fair representation of that which they purport to depict, and they are not otherwise barred by an exclusionary rule." *Commonwealth* v. *Mahoney*, 400 Mass. 524, 527 (1987), quoting *Commonwealth* v. *Harvey*, 397 Mass. 351, 359 (1986). We have not, however, yet resolved "the broad issue of the admissibility of fresh complaint evidence appearing on a videotape of a police interview." *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989).

We have viewed the videotape. The statement made by the victim and recorded in the videotape did not differ from the testimony of fresh complaint given by the five witnesses. In addition, the taped statement did not differ from the victim's in-court testimony. We have stated that fresh complaint evidence which is a mere summary of the victim's testimony at trial is cumulative and not prejudicial to the defendant. See *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976); *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971). The fact that, in this case, the fresh complaint evidence was presented to the jury through the use of a videotape in which the victim can be seen telling a police officer about the incident in a relatively composed manner, did not by itself make the evidence other than cumulative in nature and did not, therefore, make it prejudicial to the defendant.[5]

---

[5]The defendant also argues that the use of the videotape violated his right to confrontation. We do not agree. Evidence of the extrajudicial statement was admitted for corroborative purposes. The evidence, therefore, did not fall under the protection of the confrontation clause or within the scope of the hearsay rule. See *Commonwealth* v. *McGrath*, 351 Mass. 534, 539 (1967). Compare *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 547 (1988) (statute which allows victim of sexual abuse to testify outside of courtroom through videotape or simultaneous transmission violates confrontation rights). See also *State* v. *Pilkey*, 776 S.W.2d 943, 951 (Tenn. 1989), cert. denied, 494 U.S. 1032 and 494 U.S. 1046 (1990) (admission for substantive purposes of videotape statement of sexual assault victim violated defendant's confrontation rights).

Commonwealth *v.* Lavalley.

This case, however, raises serious questions regarding the continued viability of a rule which allows the Commonwealth to introduce details of fresh complaint during its case-in-chief as a way of corroborating the victim's in-court testimony. The overuse or "piling on" of evidence regarding the details of several fresh complaints may create the risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred.[6] These issues have not been adequately focused, or briefed, in this case. We therefore invite parties in the future to give the court an opportunity to reassess the rule which allows the Commonwealth to introduce the details of a fresh complaint for corroborative purposes during its case-in-chief.[7]

---

[6]During the trial, the Commonwealth did not contend that the statement made by the victim and recorded in the videotape was a spontaneous utterance, see *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973), and therefore it did not attempt to introduce the videotape as substantive evidence that the defendant raped the victim. We do not decide whether the videotape could have been used as evidence that the victim did not consent. See *State* v. *Parker*, 112 Idaho 1, 4 (1987) (trial court did not abuse discretion in ruling that tape of victim's statement to police three hours after incident was spontaneous utterance and thus admissible as substantive evidence).

[7]We are also troubled by the sexist reasoning behind the theoretical underpinning of the fresh complaint rule. The origin of the rule can be traced to the common-law doctrine of "hue and cry" whereby the victim of a felony was required to alert the neighborhood that a crime had been committed in order to facilitate the criminal's apprehension. See 2 F. Pollock & F. Maitland, The History of English Law Before Edward I 576-577 (1895). Proof that a complaint was made became a necessary element of the prosecution's case. *Id.* at 578. When applied to rape cases, it appears that the rule was used not only as a way of assisting in the apprehension of criminals, but also as a way of forcing women to declare their injury in public. See 6 J. Wigmore, *supra* at § 1760, at 240, quoting H. De Bracton, *De Legibus Angliae* f. 147 (ca. 1250). With the development of the hearsay rule, the British courts eventually abolished the hue and cry requirements, but without much reasoning continued to admit evidence of fresh complaint in cases of rape. *Id.*

American courts, using British precedents, adopted the fresh complaint rule. Admitting evidence of fresh complaint, however, violates the rule that a witness' in-court testimony may not be supported by proof of a prior consistent statement. See 4 J. Wigmore, *supra* at § 1124, at 255. In order to justify the admission of fresh complaint evidence in cases of rape, the courts applied a tortuous, sexist reasoning, namely that it was "natural"

2. *Consciousness of guilt.* The defendant was arrested on the night of the incident. Shortly after he was arrested, the defendant insisted on making a statement. In the statement, which was admitted in evidence, the defendant stated that earlier in the day he had been drinking with the victim and a few friends. The defendant stated that he had an argument with the victim and that she had cried. The statement did not mention anything about the defendant and the victim walking up the hill together and engaging in sex. On October 26, 1988, the day after the defendant was arrested, the defendant told the police that the victim and he had separated from the rest of the group and walked up the hill together. The defendant told the police that the victim kissed him and made sexual advances. When he was asked whether he had pulled the victim's pants down and placed his fingers inside the victim's vagina, the defendant said that he might have but that he could not remember.

---

for a victim of rape to speak to others about the sexual assault. See, e.g., *Baccio* v. *People,* 41 N.Y. 265, 268 (1869) ("it is so natural as to be almost inevitable, that a female, upon whom the crime has been committed will make immediate complaint"); *State* v. *Neel,* 21 Utah 151, 155-156 (1900) ("[t]he natural instinct of a female thus outraged and injured prompts her to disclose the occurrence at the earliest opportunity"). See generally 4 J. Wigmore, *supra* at § 1135, at 300. The courts viewed an unexplained failure to speak about the rape as an inconsistent statement or self-contradiction. There was a danger, therefore, that if no evidence was admitted regarding the victim's complaint, the jury might assume that none was made. As a result, the prosecution was allowed to rebut the "natural assumption" that a victim who did not complain was not raped by showing that the victim in fact did speak to others about the attack. *Id.* at 298-299.

In view of more enlightened insights of how a victim of a sexual assault typically responds, we are somewhat skeptical of the view that victims of rape should be expected to speak out about the attack shortly after it occurs. In fact, due to the social stigma and skepticism which victims of rape often confront, the opposite may be true. See Estrich, Rape, 95 Yale L.J. 1087, 1140 (1986). We are troubled by a rule which assumes that only those victims who complain of rape were actually raped, while those who remain silent somehow consented to the sexual assault. In any event, the majority of the American courts resolve this issue by a more moderate rule that the fact of a seasonable complaint, without details, suffices to remove the allegedly impeaching effect of silence.

During the trial, the defendant testified that it was the victim who had lowered her pants, grabbed his hand and placed it between her legs. During cross-examination, the prosecutor asked the defendant why, in his statement to the police on the night he was arrested, he did not mention the fact that he had been alone with the victim and that the latter had pulled her own pants down, thereby initiating the sexual contact. The defendant replied that he had not told the complete story to the police on the night of his arrest because he was afraid of being charged with rape. During closing argument, the prosecutor suggested to the jury that the defendant, on the night of his arrest, did not mention to the police that he had had sexual contact with the victim because he "needed time to figure out what it was [he was] going to say."[8]

a. *Instructions.* The prosecutor asked the judge to instruct the jury on consciousness of guilt, arguing that the statement given by the defendant on the night of his arrest was false. The defendant objected. The judge orally instructed the jury that, if the Commonwealth proved that the defendant made false statements, they could consider whether the statements "indicate feelings of guilt by the defendant, and whether in turn such feelings of guilt might tend to show actual guilt of these charges."[9]

---

[8]The prosecutor also told the jury to "[l]ook at [the defendant's] statement [to the police] and see the degree of memory, and the focus of the defendant's memory about the events of that day. And see what the defendant leaves out. What he does is he talks about where he was earlier in the day and so on; never once mentioning that he was alone with [the victim]; never once mentioning that it was [the victim] who was the aggressor, that it was [the victim] who pulled her pants down."

[9]The judge also told the jury that: "You are not required to draw such inferences, and you should not do so unless they appear to be reasonable in light of all the circumstances in this case. If you decide that such inferences are reasonable, it will be up to you to decide how much importance to give them. But you should always remember there may be numerous reasons why an innocent person might make false statements. Such conduct does not necessarily reflect feelings of guilt. Please also bear in mind that a person having feelings of guilt is not necessarily guilty in fact, for such feelings are sometimes found in innocent people." The judge did not draw the jury's attention to the specific evidence which might constitute consciousness of guilt.

The defendant, citing *Commonwealth* v. *Haas*, 373 Mass. 545 (1977), *S.C.*, 398 Mass. 806 (1986), argues that the judge's instructions, coupled with the prosecutor's closing argument, violated his right against self-incrimination because the jury was free to take into consideration, as evidence of consciousness of guilt, the fact that he did not tell the police on the night of his arrest that he had sex with the victim. In *Haas*, the prosecutor, during closing argument, pointed out to the jury that the defendant had never denied having committed the crime. *Id.* at 558. We stated that since the defendant was never directly asked whether he had committed the crime, "the Commonwealth asked the jury to infer guilt from the mere fact that [the defendant] did not spontaneously volunteer that he was innocent. It hardly need be said that no person being interrogated bears this burden." *Id.* at 559.

In the present case, the prosecutor did not suggest to the jury that the defendant's failure to deny that he committed the crime was evidence of the defendant's guilt. Instead, the Commonwealth's contention was that, in light of the defendant's testimony during the trial, his failure to mention in his first statement to the police that he had been alone with the victim and that the victim had made sexual advances, constituted a false statement which demonstrated consciousness of guilt. The prosecutor did not, as the defendant suggests, make any reference to the fact that the defendant did not deny having committed the crime.[10]

It is well-settled that false statements made by a defendant are admissible to show consciousness of guilt. *Commonwealth* v. *Basch*, 386 Mass. 620, 624 (1982). *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975). *Commonwealth* v. *Eppich*, 342 Mass. 487, 492 (1961). The judge did not err in instructing the jury that if they found that the defendant

---

[10]There is no allegation that the defendant, on the night of his arrest, exercised or was denied his right under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), not to speak to the police.

made false statements to the police they could consider the statements as evidence of consciousness of guilt.

b. *Written instructions.* At the end of the judge's charge to the jury, he informed them that he would give them written instructions for use during their deliberations. The defendant had submitted requested instructions on reasonable doubt and fresh complaint. The Commonwealth had submitted requested instructions on rape, assault and battery, consciousness of guilt, and intoxication as not being a defense. The written instructions given to the jury were copies of the parties' requested instructions. Defense counsel objected to the written instructions on consciousness of guilt because they did not state that "an innocent person may have reasons to make a false statement."[11]

In *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), we stated that if there is evidence of consciousness of guilt,[12] the judge should instruct the jury "(1) that they are not to convict a defendant on the basis of evidence of [consciousness of guilt] alone, and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant" (citation omitted). The judge's written instructions were practically identical to the language found in *Toney*.[13]

---

[11]In *Commonwealth* v. *Dilone*, 385 Mass. 281, 287 n.2 (1982), we "endorse[d] any reasonable procedure by which all portions of a judge's charge agreed to by the parties are made available in writing to a jury." The defendant argues that he did not consent to any of the written instructions, and that therefore the judge erred in submitting written instructions. While the record does not indicate an agreement among the parties on the use of written instructions, the record does show that, of the six written instructions submitted to the jury, defense counsel only objected to the one on consciousness of guilt.

[12]In *Toney*, there was evidence that the defendant avoided meeting the police during their investigation of the crime. We stated that, "[a]lthough our comments speak in terms of flight or concealment, we note that they are for the most part applicable to other types of evidence offered to prove consciousness of guilt, for example, false statements made to police, destruction or concealment of evidence, or the bribery or threatening of a witness." *Commonwealth* v. *Toney*, *supra* at 584 n.4.

[13]The judge's written instructions on consciousness of guilt were as follows: "Now, there has been mention made of evidence of the type the law

We also stated in *Toney* that the judge, if requested, should instruct the jury that innocent people might engage in conduct which might appear to demonstrate feelings of guilt. See *id.* at 585 n.6.[14] We believe that the judge in this case, when the issue was brought to his attention by defense counsel, should have added to the written instructions the idea that innocent people sometimes engage in conduct which demonstrates consciousness of guilt. See *Commonwealth* v. *Matos*, 394 Mass. 563, 564-565 (1985). In *Matos*, we reversed a conviction because the judge refused to give both the mandatory and the requested supplemental *Toney* instructions. The Appeals Court in *Commonwealth* v. *Estrada*, 25 Mass. App. Ct. 907, 908 (1987), noting that the evidence of consciousness of guilt in that case "played a significant part in the conviction," reversed the conviction because while the judge gave the mandatory *Toney* instruction, he failed, after a request by the defendant, to give the supplemental instruction. Compare *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 400 (1987) (failure to give supplemental in-

calls 'consciousness of guilt'. Any evidence that you find that the [d]efendant made false or misleading statements to the police may be considered in determining the [d]efendant's guilt. If you find that the defendant has made false statements as to material facts, such statements may be considered as showing a consciousness of guilt. *Commonwealth* v. *Kerrigan*, 345 Mass. 508 (1963). *Commonwealth* v. *DiStasio*, 297 Mass. 347 (1937). *Commonwealth* v. *Barber*, 261 Mass. 281 (1927).

"However, you are not to convict a defendant solely on the basis of some evidence of consciousness of guilt alone. You may, but need not, consider such evidence, along with other evidence as you may find, as a factor tending to prove the guilt of the defendant. *Commonwealth* v. *Toney*, 385 Mass. 575, 584-586 (1982)."

[14]"[I]t would be appropriate for a judge, if requested, to caution the jury on the dangers inherent in drawing the inference of guilt from the fact of flight. When such a request is made, the judge should explain to the jury, in appropriate language, first, that since there are numerous reasons why an innocent person might flee, flight or similar conduct does not necessarily reflect feelings of guilt. Second, he should explain that, even where a person's flight does demonstrate feelings of guilt, it does not necessarily mean that the person is in fact guilty, because feelings of guilt are sometimes present in innocent people. Such an elaboration, if given prior to the requested instructions, might help the jury to understand better the required instructions" (citation omitted). *Id.*

struction not reversible error because omission had negligible effect on verdict). We do not think it is necessary for us to determine what effect the judge's failure to include the supplemental *Toney* instruction in his written instructions had on the verdict since the supplemental instruction was included in his oral charge.[15] There was no reversible error.

3. *Conclusion.*The use of the videotape recording of the victim's statement to the police as evidence of fresh complaint was not prejudicial to the defendant. In addition, the judge did not commit reversible error in his instructions to the jury on consciousness of guilt.

*Judgment affirmed.*

---

[15]See note 9, *supra.*

While we endorse the use of written instructions if agreed to by the parties, see *Commonwealth* v. *Dilone, supra,* they should be an exact reproduction of the judge's oral charge.