COMMONWEALTH *vs.* ANDREW JEROME
(and a companion case[1]).

Nos. 91-P-1367 & 91-P-1368.

Essex. October 8, 1993. - February 11, 1994.

Present: FINE, KAPLAN, & GILLERMAN, JJ.

*Rape. Evidence*, Fresh complaint, Tape recording, Relevancy and materiality.

In the circumstances of a rape trial, the defendants were not prejudiced by any error in the admission of fresh complaint evidence consisting of an incomplete tape recording of excerpts from the complainant's sessions with a psychotherapist. [62-63]

At the trial of indictments charging rape of a child, the judge acted within his discretion in admitting testimony regarding the complainant's postabuse behavior. [63-64]

INDICTMENTS found and returned in the Superior Court Department on May 17, 1989.

The cases were tried before *John P. Forte*, J., sitting under statutory authority.

*Elizabeth A. Lunt* for Andrew Jerome.

*M. Page Kelley*, Committee for Public Counsel Services, for Ruth E. Jerome.

*Robert J. Bender*, Assistant District Attorney (*Frederick B. McAlary*, Assistant District Attorney, with him) for the Commonwealth.

GILLERMAN, J. Following a seven-day trial, a jury convicted each of the defendants, Andrew and Ruth Jerome, of rape of a child by unnatural sexual intercourse, G. L. c. 265, § 23.[2] On appeal, the defendants argue that a tape

---

[1]Commonwealth *vs.* Ruth E. Jerome.

[2]Andrew Jerome was acquitted of a charge of rape of a child by sexual intercourse, G. L. c. 265, § 23.

Commonwealth *v.* Jerome.

recording of the complainant's fresh complaint, as well as other prejudicial testimony, was erroneously admitted in evidence. For the reasons set forth below, we affirm the judgments.

The jury could have found the following facts. Susan,[3] the complainant, is the daughter of Ruth Jerome and the stepdaughter of Andrew Jerome. At the time of trial she was seventeen years old. She alleges that the defendants sexually abused her when she was between the ages of five and eight. The indictments involved only those acts that occurred in November, 1981, when the complainant was eight years old and while the complainant and the defendants were living on Baker's Island, Massachusetts. The odious details need not be recited; it is enough to say that the complainant testified to a variety of acts of sexual abuse forced upon her by the defendants. In December, 1981, the abuse ended when the complainant and her younger sister moved to New Jersey to live with their father.

The appeal has to do, in part, with a tape recording of conversations between Susan and Dr. Clark, a therapist whom she visited early in 1982 when she was eight years old. The record lacks detailed information about the manner in which Dr. Clark recorded portions of his conversations with Susan. We do know, however, that at a sidebar conference, with the jury not present, counsel for the defendants, in the presence of the prosecutor, said, "We have reason to believe, and I suggest that [the prosecutor] concurs, that there were four therapy visits constituting approximately five hours. We have one hour of tape . . . . There were three interviews on that tape that seemed to start and stop without being identified as to the date, the place."

We also know, from Dr. Clark's testimony, that he met with Susan four times, on January 18, January 20, February 17, and March 3. And we know Dr. Clark's procedure for the recording: "I have a tape recorder that I use in situations where I think there might be legal implications. I at some

---

[3]We use a pseudonym.

point began taping some of the material that I was getting. . . . I began by taping the session with [Susan's father] and [Susan] at some point, although I don't believe it was in the very beginning. It may have been. Then I taped most of my sessions with [Susan]. Most of the time I spent with her alone I believe I also taped."

Dr. Clark did not testify to the duration of any session, or to the total time of all sessions, or to the content of any sessions.[4] If we assume, as we should, that the representation of counsel as to the five hours of sessions was reasonably accurate, Dr. Clark did not record "most" of his sessions with Susan. See *Commonwealth* v. *Fernette*, 398 Mass. 658, 664-665 (1986) ("[T]here is a potential for abuse if the tape recorder is started and stopped during an interview. . . . [T]he better practice is to leave the tape recorder on during the entire interview . . ."). Compare *Commonwealth* v. *Allen*, 22 Mass. App. Ct. 413, 421-423 (1986) (incomplete tape recording should have been admitted in evidence because it represented "about the only chance the defendant had to create a reasonable doubt in a prosecution in which he faced . . . a sentence of life imprisonment").

We have, then, four visits which were, in total, approximately five hours in duration, while the tape heard by the jury (and played back by this court) lasts exactly eighty-one minutes. The tape does not reveal which session is being recorded, except for one reference to February 17. Among other subjects, the tape captures Susan's disclosures of the alleged sexual abuse.

The trial judge admitted the tape as evidence of fresh complaint,[5] permitting it to be played to the jury and allowing each juror to read a transcript of the tape while it was

---

[4]Susan first reported the abuse to her father, but disclosed no details. It was this report that precipitated the appointments with Dr. Clark.

[5]There is no issue on appeal as to the freshness of the complainant's statement to Dr. Clark, which the trial judge appropriately found was reasonably prompt.

being played.[6] Shortly before the tape was played, the judge instructed the jury that "[n]othing in this statement" can be used to help you determine whether or not the Commonwealth has proven every element. It is only offered to you once the alleged victim has testified for the purpose of helping you determine whether or not this corroborates what the alleged victim said on the stand."

A sexual assault victim's prompt out-of-court complaint about the attack is admissible to corroborate his or her testimony, but may not be used to establish the truth of the complaint itself. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 643 (1991), and cases cited. *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992). In proper circumstances, a tape recording or videotape of the victim's complaint is admissible since it may provide a reliable evidentiary resource. See *Commonwealth* v. *Lavalley*, 410 Mass. at 645. See also *Commonwealth* v. *Gordon*, 389 Mass. 351, 355-356 (1983) (recorded testimony admissible subject to certain limitations).

The admissibility of a taped conversation, if the conversation is relevant and not otherwise excludable, turns on whether the tape provides "a fair representation of that which [it] purport[s] to depict . . . ." *Commonwealth* v. *Lavalley*, 410 Mass. at 645. One factor to be considered is whether the tape is so incomplete as to be untrustworthy, creating the risk that the jury will be misled. *Commonwealth* v. *Allen*, 22 Mass. App. Ct. at 421-422. The recording must be a fair representation of the entire conversation between the parties, and it must not be inadmissible under an exclusionary rule. *Commonwealth* v. *Mahoney*, 400 Mass. 524, 527 (1987). *Commonwealth* v. *Lavalley, supra* at 645.

We need not decide whether this incomplete tape was admitted erroneously, for we conclude that the admission worked no significant prejudice to the defendants. The test is whether "the error possibly weakened [the defendants'] case in some significant way so as to require a new trial." *Com-*

---

[6]A small portion of the tape, which contained Dr. Clark's conversation with the complainant's younger sister, was not played to the jury. The transcript was not admitted in evidence.

*monwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993), quoting from *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983). The information disclosed on the tape did not fill in any gaps in the Commonwealth's proof of the essential elements of the crime, see *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. 706, 710 (1992), and the fact that it did not replicate exactly Susan's testimony is not reason to bar its admission. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). Indeed, the recorded conversation contained less inflammatory detail than that to which Susan testified on direct examination.[7] See *Commonwealth* v. *Lavalley*, 410 Mass. at 645 ("fresh complaint evidence which is a mere summary of the victim's testimony at trial is cumulative and not prejudicial to the defendant"). Further, given the subject matter of the indictments, the taped conversation was "hardly inflammatory." *Commonwealth* v. *Scanlon*, 412 Mass. at 671.

Of particular importance is the fact that Dr. Clark was in court, testified, and was cross-examined by the defendants. They chose not to examine him with regard to the content of the unrecorded conversation, but that was a strategic decision of counsel, not one imposed upon them. The tape, in short, was merely a substitute for Dr. Clark's direct testimony on the same subject, and the judge so informed the jury ("Generally speaking, the doctor would be on the stand and he would repeat orally from the stand what [Susan] told him. But rather than have him rely on his memory, we are utilizing the tape instead"). We conclude that any possible error with regard to the admission of the tape worked no material harm to the defendants' case.

Andrew Jerome argues that the complainant's testimony (admitted without objection by the defendants) on direct examination regarding the various kinds of therapy she underwent after the alleged abuse, her emotions and personal

_____

[7]The defendants declined the judge's invitation to identify any portions of the tape recording that ought to be redacted, foreclosing arguments in this court that there were objectionable portions of the recording. See *Commonwealth* v. *Hollyer*, 8 Mass. App. Ct. 428, 432 (1979).

problems, including three attempts at suicide made after the alleged abuse, was irrelevant[8] and created a substantial risk of miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We disagree. The admissibility of testimony regarding postabuse behavior by the complainant is left to the sound discretion of the judge. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 378 (1989). There the complainant's mother testified that after reporting the rape to the police, which was shortly after the rape, the complainant "would awake at night trembling and screaming." The court held that the testimony was admissible because it tended to show that the victim did not fabricate his story. The evidence is no less admissible in this case (where the *Freeman* standard of review is applicable) because the complainant herself described her postabuse behavior. This appears to be the prevailing rule in other jurisdictions. See *Street* v. *United States*, 602 A.2d 141, 145 (D.C. 1992), where the cases are collected.

We have reviewed the remaining arguments of the defendants; they have no merit. Any excessive zeal in the prosecutor's closing argument was effectively cured by the judge's charge to the jury.

*Judgments affirmed.*

---

[8]Andrew Jerome does not claim as error the complainant's testimony regarding her counseling in 1988 at Family Growth, an organization that prepares alleged victims to testify at trial; this testimony was ostensibly offered to explain why the authorities were not notified until 1989.