Lopez, J.
BACKGROUND
On February 21, 1995, plaintiff Fritz Thermidor was an employee of Ivex Corporation (“Ivex”) in Newton, Massachusetts.[1] Mr. Thermidor was severely injured while working with a printing press at Ivex which had been manufactured by the defendant Kidder, Inc. (“Kidder”).[2] As a result of his injuries, Mr. Thermidor has been unable to return to his employment at Ivex. Mr. Thermidor filed this action against Kidder for the injuries he sustained making claims for negligence (Count I), breach of express and implied warranties (Count II) and Chapter 93A violations (Counts III through VII).
On November 25, 1996, the Court heard oral argument on defendant Kidder’s motion for summary judgment. The Court initially denied the motion on November 27, 1996. On December 2, 1996, the court sua sponte issued a decision that it was reconsidering the denial. Both parties were authorized to submit supplemental materials on the issue. For the reasons which follow, the Court is reversing its initial ruling and ordering partial summary judgment in favor of the defendant.
FACTS
The facts in the light most favorable to the plaintiff are as follows:
In 1973, Kidder was in the business of designing and manufacturing printing presses. St. Regis was in the printing business. On or about May 4, 1973, Paul Fortin of St. Regis contacted Kidder concerning a price quote which St. Regis had obtained from another press manufacturer for an 85inch press. Over the next several months, representatives from the two companies discussed the purpose of the machine which St. Regis was interested in incorporating into its pre-existing plant.
In or about June of 1973, Kidder began offering design specifications and price quotations for the proposed Centraflex 386 press. The “3" represented the number of colors and the ”86" represented the diameter of the impression cylinder. “Centraflex” was Kidder’s name for its Central Impression Press which was a version of the basic Flexographic design. By 1973, Kidder had sold approximately 200 to 300 of the Flexographic printing presses. The design specifications and price quotations for the Centraflex 386 changed as design changes were requested and implemented. Kidder requested specific information concerning certain aspects of the printing press including, the minimum and maximum tensions, the core size involved for the various materials being run, the lowest acceptable splicing speed.
*540 At some point in mid-1973, St. Regis consulted a Mr. Ed Bromberg seeking recommendations on the proposed press. On or about September 25, 1973, W.M. Cramer of St. Regis advised Mr. Barney Tebbetts, Kidder’s Manager of Sales & Engineering, of twelve items which needed to be addressed in order to have Kidder produce a printing press that would satisfy St. Regis’ requirements. Each of those twelve items was addressed by Mr. Tebbetts.
A specifications and price quotation proposal was submitted to St. Regis on or about October 29, 1973. The machine outlined in that proposal generated from Kidder’s Central Impression Press design known as the Centraflex Printing Press. The Centraflex 386 was designed by substituting various components and adjusting their speeds and strengths to accommodate St. Regis’ needs. Kidder did not obtain a patent on the Flexographic or Centraflex designs or the Centraflex 386 design. The turret rewind spindle components which were the cause of Mr. Thermidor’s injuries had not been altered from the original design of the Flexographic press.
St. Regis submitted a purchase order for the Centraflex machine complying with that proposal on or about November 5, 1973. St. Regis continued to submit various deletions and additions to that original purchase order up through and including May of 1975.
Some of the changes were made in response to requests by St. Regis for specific parts and other changes were designed as a result of Kidder engineering changes in the machine to affect performance goals requested by St. Regis. For example, changes were made in response to a request by St. Regis to reconfigure the machine to add a two color print press to the previous design in or about March 1974 and also in response to a visit by St. Regis representative Paul Norten on or about May 4, 1974.
Sometime in the fall of 1974, third parties began to indicate an interest in the printing press being designed for use by St. Regis. In the mind of Kidder, the machine’s design was proprietaiy and was meant for a highly specialized product. Kidder did not have a patent on either the basic press design or the altered version of the design that resulted in the press at issue in this case. Because the customer, St. Regis, did not wish to have the machine disclosed to other parties, Kidder would not release a copy of the diagram.
The machine was completed at Kidder in or about July of 1975. The machine, Centraflex 386, Order Number 903-48-710 was disassembled, transported and reassembled at St. Regis’ plant in Newton, Massachusetts by Kidder and St. Regis personnel on or about July, 1975. As part of the installation, Kidder bolted the machine to the factory’s floor. Once installed at the factory, the press was known as the Kidder #425.
On or about February 21, 1995, Mr. Thermidor was injured when he was pulled into the printing press machine by the turret rewind spindles. On or about March 24, 1995, the United States Department of Labor and Occupational Safety and Health Administration (“OSHA”) cited Ivex for violating 29 Code of Federal Regulations 1910.212(a)(1) which relates to the safeguarding of rotating parts. The OSHA regulation was in effect prior to the sale and delivery of the machine to St. Regis Paper in 1975.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial can demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
RULINGS OF LAW
The issue before this Court on the defendant’s motion for summary judgment is whether the defendant Kidder is entitled to summary judgment pursuant to the Massachusetts statute of repose. (M.G.L.c. 260, §2B.) Pursuant to Chapter 260, §2B, no tort action for damages arising from the alleged negligence in the design, planning or construction of an improvement to real property shall be commenced more than six years after the earlier of (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner. Klein v. Catalano, 386 Mass. 701, 702 (1982).
A two-tiered analysis is required to determine if the defendant falls within the statute of repose. First, the court must determine whether the defendant was a protected actor within the meaning of the statute. McDonough v. Marr Scaffolding Co., 412 Mass. 636, 641-42 (1992) citing Dighton v. Federal Pacific Electric Co., 399 Mass. 687, 696 (1987). Second, the defendant’s actions fall within the statute only if they resulted in an “improvement to real property.” This court finds that Kidder’s design and manufacture of the printing press are covered activities that constitute an improvement to real property within the meaning of the statute of repose.
*541 Protected Actor
A defendant is a protected actor under the statute of repose if s/he rendered "particularized services for the design and construction of particular improvements to particular pieces of real property.” McDonough, 412 Mass. at 641-42. An actor may perform multiple roles in the market place and nonetheless retain the protections of the statute if its primary role was as a protected actor. Id. To determine the actor’s primary role, the court must analyze the defendant’s motivation and the nature of its activities in performing the services. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1160 (1st Cir. 1993).
Plaintiff argues that the press at issue in this case was a fungible product the design for which predated the sale to St. Regis. Plaintiff further argues that any changes in the basic design resulted in the substitution or adjustment of pre-existing fungible parts and did not result in the creation of new components. Finally, plaintiff argues that even if certain design changes were implemented by Kidder on certain components of the press, the turret rewind spindles which were the cause of Mr. Thermidor’s injuries were not altered in any way and therefore, that portion of the press was a fungible product which is controlled by the Uniform Commercial Code and not the statute of repose.
In the instant case, Kidder was clearly acting as the manufacturer of the printing press. However, Kidder was not acting as a mere manufacturer and supplier of a fungible printing press. Engineers at Kidder were involved in protracted design discussions with St. Regis Paper over the purpose of the printing press and the specific functions it was to perform. The design and manufacturing process for the press at issue in this case, lasted for two years. To satisfy St. Regis’ needs, Kidder used the basic Flexographic and Centraflex Printing Presses and made changes to the speed, strength, tension and diameter of the components. These changes are similar to the changes made to the custom designed cranes in Snow. See Snow v. Harnischfeger Corp., 823 F.Supp. 22, 24 (D.Mass. 1993). The fact that part of the machine was mass-produced, does not take the entire machine outside of the statute where the various component changes make the item one “built from ‘individual expertise not susceptible of the quality control standards of the factory.’ ” Snow, 823 F.Supp. at 24 n.4. It is the selection of the necessary combination of changes that is the protected activity, not the characteristics of the components themselves.
Plaintiff argues that whether this press was “one of a kind” or rather a pre-existing machine model is a material issue in dispute precluding summary judgment. In opposition to the defendant’s motion for summary judgment, plaintiff submitted an affidavit from Dr. Mroszczyk, Ph.D. This court has reviewed Dr. Mroszczyk’s affidavit. Dr. Mroszczyk’s expert opinion that the Centraflex 386 press was a pre-existing design is based upon a presumption that the July 1973 Centraflex 386 Proposal was for a pre-existing machine and that in his opinion insufficient changes were made between that proposed machine and the final product to constitute a custom designed product. However, there is no evidence before this court of any prior or subsequent sales, marketing or patenting of a Centraflex 386. Dr. Mroszczyk’s opinion that the design changes made to that July 1973 proposal were insufficient to constitute specialized design activities does not place material issues in dispute concerning the changes made to the machine but rather makes an assertion about the legal sufficiency of those changes under the statute of repose. This does not constitute a material factual issue in dispute which would preclude summary judgment.
The evidence before this court shows that a basic design existed in July of 1973 for a Kidder Printing Press known as Flexographic Printing Press, and Central Impression version of that press known as the Centraflex Press. That basic design was the foundation for two years of discussions and design changes which resulted in the Centraflex 386, Order number 703-48-710. See Snow, at 1158. There is no evidence before this court that any marketing or sales of a Centraflex 386 were ever made or that Kidder’s motivation in designing the Centraflex 386 was to create a fungible product. When asked to release the design diagram to other interested clients, Kidder refused to release the design because it was considered proprietary. Had the design been considered a propriety design of Kidder rather than St. Regis, there would have been no reason to withhold the design from potential customers. Kidder did not have, nor did it obtain a patent on either the basic design or the altered version of the press sold to St. Regis.
The evidence before this court shows that Kidder’s motivation in designing and manufacturing the Centraflex 386 was to meet the needs of a particular client and not to create a fungible product. Indeed, plaintiff previously stated that it was “undisputed” that the press was “custom ordered and designed” for St. Regis. See Plaintiffs Memorandum in Support of Second Motion for Summary Judgment at 15.
Plaintiffs final argument appears to rest on the theory that because the allegedly defective turret rewind spindles were unaltered and it was those unaltered components which caused Mr. Thermidor’s injuries any protection afforded the design activities under the statute of repose is inapplicable because this cause of action does not implicate those design activities. There is no basis for treating the improvement in a piece-meal fashion and taking the activify outside the statute based on a causal relationship analysis.
*542 Improvement to Real Properly
In order to gain the protections of the statute of repose, Kidder’s specialized design functions must have resulted in an improvement to real property. An improvement to real property means a “permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.” Conley v. Scotts Products, Inc., 410 Mass. 645, 647 (1988) quoting Webster’s Third New Int’l Dictionary 1138 (1971). Plaintiff argues that this definition of an improvement to real properly is only applicable where the defendant’s status as a protected actor is not in doubt. See Dighton, 399 Mass. at 697-98. However, this court has found that defendant’s actions fall within the statute. The statute does not define improvement and the aforementioned definition is an appropriate guide in determining whether this press was the result of a specialized design process.
Plaintiff argues that it remains in dispute whether the press is permanently bolted to the floor and thus whether it is a permanent fixture in the Ivex plant. However, the Massachusetts Supreme Judicial Court has expressly rejected a fixture analysis in this context. Dighton, 399 Mass. at 687. Therefore, the subjective characterizations of the machine concerning the permanence of its attachment to the factory floor are not material issues in dispute. Id. at 698; Snow, 12 F.3d at 1161 n.10. In addition, the fact that Kidder’s installation of the machine was optional also does not affect the applicability of the statute for it is the act of designing and manufacturing the customized press not its installation that brings Kidder within the statute. Dighton, 399 Mass. at 696.
Plaintiff also argues that even if the printing press improved the value of the factoiy, the factory was pre-existing and the press was not essential to the usefulness of the structure as distinguished from the cranes in Snow. However, as the trial court pointed out in Snow, Massachusetts courts do not require that to benefit from the statute of repose, an actor must have designed a building or portion thereof. Snow, 823 F.Supp. at 28. The protected activity must add to the value and usefulness of the properly, it does not have to be essential to the usefulness of the property in order to qualify as an improvement within the meaning of the statute.
Relying on Dr. Mroszczyk’s affidavit, plaintiff argues that if the press had been considered part of the facility, St. Regis would have had to have obtained a building permit for the installation. Because no building permits were obtained, plaintiff argues, the machine cannot qualify as an improvement to the factory. Plaintiff cites 780 Code of Massachusetts Regulations 113.1 in support of this argument which states in relevant part that it shall be unlawful “to install or alter any equipment for which provision is made or the installation of which is regulated by code without first” obtaining a permit. Plaintiff has not directed this court to any code section which brings this machine within the purview of this regulation. The fact that the court has used the presence of building permits as one factor in defining an improvement as one made to real property, does not require that such permits exist as a precondition to falling within the statute of repose. see Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 823 n.8 (1986).
The undisputed facts show that Kidder custom designed the Centraflex 386 for use by St. Regis at their pre-existing printing factory. The press was designed to perform specific tasks and to fit onto the factoiy floor and to improve the value and productivity of the printing factory. Therefore, the printing press at issue in this case, like the cranes in Snow, constitute an improvement to real property within the meaning of the statute.
SCOPE OF THE STATUTE
Plaintiff argues that even if the statute of repose applies in this case, only the plaintiffs negligence action is barred. Defendant contends that the statute bars all causes of action related to the machine. The statute of repose bars all actions in tort connected to the protected activity. G.L.c. 260, §2B; McDonough, 412 Mass. at 636. It does not bar claims in contract. Klein, 386 Mass. at 708. Because the plaintiffs express warranty claim and the related allegations of 93A violations focus on the alleged promise from Kidder that the machine would comply with the existing OSHA regulations, those express warranty claims are not barred by the statute of repose. Anthony’s Pier Four, Inc., 396 Mass. at 822-23.
The statute of repose applies in this case and thus bars Counts I, III, IV and so much of Counts II, VI and VII of plaintiffs second amended complaint as allege Chapter 93A violations stemming from the breach of implied warranties claims.
ORDER
For the aforementioned reasons, it is hereby ORDERED that the defendant Kidder Inc.’s motion for summary judgment is ALLOWED and judgment shall enter for the defendant Kidder Inc. on Counts I, HI, IV and so much of Counts II, VI and VII as pertain to the alleged breach of implied warranties.

Ivex Corporation was formerly known as St. Regis Paper Co. and alternatively as the Sherman Division of St. Regis Paper.

Kidder Inc. was formerly known as Kidder Stacy Company, both as a division of Motter Printing Press Co. and as a subsidiary.