COMMONWEALTH *vs.* MICHAEL G. RICHOTTE.

No. 02-P-561.

Franklin. May 13, 2003. - October 8, 2003.

Present: BROWN, DREBEN, & DOERFER, JJ.

*Practice, Criminal,* Argument by prosecutor, Comment by prosecutor, Transcript of evidence. *Evidence,* Prior inconsistent statement.

At the trial of an indictment charging assault and battery by means of a dangerous weapon, the prosecutor's closing argument did not contain improper comment on omissions in the defendant's postarrest statements, where the prosecutor did not suggest that the defendant was required to assert his innocence, but merely drew attention to the patent inconsistency between the defendant's voluntary postarrest statements describing an intentional assault and his trial testimony alleging inadvertence. [525-529]

At a criminal trial, the judge did not abuse his discretion by denying the jury's request for a transcript of the victim's testimony, where the trial was relatively short and the principal points of contention were simply matters of credibility, rather than difficult technical matters. [530]

INDICTMENT found and returned in the Superior Court Department on November 8, 2000.

The case was tried before *Judd J. Carhart*, J.

*Sandra P. Wysocki Capplis* for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of assault and battery by means of a dangerous weapon. See G. L. c. 265, § 15A. On appeal he alleges that (1) the prosecutor's closing argument contained improper comment on omissions in the defendant's postarrest statements; and (2) the trial judge abused his discretion by failing to grant a jury request to review a portion of the trial transcript during deliberations. We affirm.

*Facts.* At the time of the assault that gave rise to the charges

here, the defendant shared an apartment with his male companion, Michael Taylor, and an associate, Alberto Lorenzi. The attack occurred in the kitchen during an argument between Taylor and the defendant over certain domestic matters. Lorenzi was also present. The defendant had been drinking heavily and, after exchanging angry words with Taylor, stabbed him in the left shoulder with a steak knife.

After the stabbing, Taylor was able to summon police assistance. Officers arrived almost immediately. Although the record is somewhat vague on the point, the defendant appears to have fled to a nearby apartment where he was arrested. He was given Miranda warnings, then was placed in a police cruiser and transported to the police station for booking.

During the drive, the defendant made several spontaneous inculpatory statements, including an admission that he had stabbed Taylor. Once at the police station, the defendant again received Miranda warnings, after which he repeated his admission that he had stabbed Taylor. On appeal, the defendant has not questioned the voluntariness of these statements.

The defendant did not testify at trial. The crux of his case was that Lorenzi had pushed his arm and thereby caused the stabbing; and that Lorenzi had subsequently convinced the intoxicated defendant that he (the defendant) had stabbed Taylor. In support of this theory, Taylor testified that some time after the stabbing, Lorenzi had confessed his role in the incident to Taylor. For his part, Lorenzi denied both the confession and any role in the attack; he testified that the defendant had stabbed Taylor in a drunken rage.

Other relevant facts are included as necessary in our analysis of the claims.

1. *Right to remain silent.* The defendant's first claim is that the prosecutor, during her closing argument, undermined the defendant's rights under art. 12 of the Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution to remain silent by suggesting to the jury that the defendant bore an affirmative duty to proclaim his innocence during postarrest questioning, and that the absence of such exculpatory protestations was a proper basis for inferring guilt.

In support of his claim, the defendant cites the following passage from the prosecutor's closing speech:

> "No word in there about Lorenzi pushing him. And you know based on your common sense and your experience that if you're accused of doing something that's your opportunity to say Lorenzi pushed me."

After careful review, and considering the context of the contested comments, we conclude that the prosecutor did not exceed the bounds of proper argument.

The questions of when and how a prosecutor may comment on alleged omissions in a defendant's postarrest, post-Miranda statements is a vexed area of the law. In establishing the boundaries of permissible comment, two principles collide: the government's right to impeach a defendant with prior inconsistent statements and the defendant's right to remain silent and put the government to its proof. The intersection of these competing concepts creates inevitable grey areas.

To begin with the basic law: It is absolutely forbidden for a prosecutor, for the purpose of urging an inference of guilt, to draw the jury's attention to the fact that a defendant exercised his constitutional right to remain silent in the face of police inquiry. See *Doyle* v. *Ohio*, 426 U.S. 610 (1976); *Commonwealth* v. *Teixera*, 396 Mass. 746. 752 (1986). Moreover, contrary to the Commonwealth's assertions here, this absolute prohibition is not negated when a defendant waives that right and makes voluntary statements to investigators. Despite an initial voluntary waiver, a suspect remains free to "invoke the right [to remain silent] at any time," and the exercise of that right is not generally a permissible subject for comment. *Commonwealth* v. *Fowler*, 431 Mass. 30, 38 (2000). See also *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 685 n.4 (1992), cert. denied, 510 U.S. 975 (1993).

Likewise, a prosecutor may never suggest to the jury that a suspect bears any affirmative duty during post-Miranda questioning to deny wrongdoing or otherwise assert his innocence. See *Commonwealth* v. *Haas*, 373 Mass. 545, 558-559 (1977). As we stated recently in *Commonwealth* v. *Andujar*, 57 Mass. App. Ct. 529, 536 (2003), "[a] defendant, when in the

hands of police, should be able to invoke core constitutional rights, such as the right to remain silent, without fear of making implied or adoptive admissions." To hold otherwise would reverse the traditional burden of proof in a criminal proceeding. "The presumption of innocence also means that no person ever has to prove his or her innocence." *Commonwealth* v. *Martino*, 412 Mass. 267, 282 (1992).

In tension with these concepts, however, is the rule permitting a prosecutor to rebut a defendant's trial theories with any and all admissible evidence, including voluntary statements made during postarrest interrogation.

These principles were applied by the Supreme Judicial Court in *Commonwealth* v. *Lavalley*, 410 Mass. 641, 648-650 (1991). In *Lavalley*, the prosecutor cited, by way of impeachment, the fact that the defendant, who was on trial for rape, had failed to tell police in his postarrest statements that it was the victim who had undressed first and initiated the sexual contact. *Id.* at 648. As here, the defendant in *Lavalley* alleged that the prosecutor's comments impermissibly burdened the defendant's right to remain silent.

The court disagreed, concluding that the prosecutor's comments, in context, properly brought the jury's attention to material differences between the defendant's trial testimony and his pretrial remarks. Stated differently, the focus of the prosecutor's observations in *Lavalley* "was not [the defendant's] pretrial silence but his pretrial statements contrasted with his trial testimony. The prosecutor was not trampling on the constitutional right to remain silent; he was performing [the] proper function of alerting the jury to possible flaws in the defendant's testimony." *Commonwealth* v. *Sherick*, 401 Mass. 302, 305 (1987). That is the case here.

There is, however, a potentially important difference between the present case and *Lavalley*; specifically, the defendant did not testify here. Rather, the defendant developed his core theory — i.e., that the stabbing had been caused by Lorenzi — entirely through suggestive cross-examination and argument. The references to the defendant's pretrial statements rebutting this theory cannot be viewed, therefore, as impeachment evidence in the strict sense.

However, we conclude that the basic principles underlying *Lavalley* govern the current situation nonetheless. Indeed, as we recently observed in *Commonwealth* v. *Donovan*, 58 Mass. App. 631, 640 (2003), "variance and inconsistency between . . . post-Miranda statements and the defense theory at trial are not off-limits to the prosecution *even if the defendant does not testify*" (emphasis added). Whether or not the defendant testifies, the question is always whether the prior statements were used for a proper purpose.

All claims of alleged overreaching in a prosecutor's closing argument must be viewed in context to determine their toxic effect, if any. Here the contested sentences came in the midst of a pointed comparison of the defendant's postarrest statements, which had been properly admitted in evidence as admissions, with his theory of defense at trial:

> "You have a person who's brought to the police station, they're given their rights, they're given their Miranda rights twice as a matter of fact and they agree, [the defendant] says yes he'll talk to the police and he makes these statements and they're not just statements like "Yeah I did it, okay I did it," they're statements "I stabbed him is what I did, it was just a homosexual bitch fight, Mr. Taylor is a slob, he's a dirty hairy fat-assed slob, that's why I stabbed him, I admitted I stabbed him, I'm a bad boy" . . . Doesn't that sound like a fight between two people, an argument, you're arguing about things, that's his motive. We don't have to prove motive to you, but that's why he did it. No word in there about Lorenzi pushing him. And you know based on your common sense and your experience that if you're accused of doing something that's your opportunity to say Lorenzi pushed me."

The prosecutor's point was not that the defendant had failed to assert his innocence; rather, the unmistakable thrust of the prosecutor's comments (again in context) was to draw attention to the patent inconsistency between the defendant's voluntary postarrest statements describing an intentional assault and his trial theory alleging inadvertence. Contrast *Commonwealth* v. *Person*, 400 Mass. 136, 140-141 (1987).

Stated differently, the prosecutor here was not emphasizing

what the defendant had *failed* to say, so much as arguing that what he *did* say was wholly incompatible with the defense proffered at trial. Indeed, it is difficult to see how the prosecutor could have impugned the defendant's right to remain silent — or, more properly, his right to be free from any obligation to assert his innocence — in a case where the defendant effectively confessed to the crimes charged. In any event, the prosecutor engaged only in fair comment on the evidence.

It is important to emphasize that the defendant's postarrest statements here did not depend on their character as prior inconsistent statements (i.e., impeachment evidence) as a basis for admission. Rather, they were independently admissible for substantive purposes as party admissions. The fact that the defendant did not testify, therefore, is immaterial to their evidentiary status. They were fair game for comment regardless of whether the defendant took the stand, provided only that the prosecutor, as delineated in *Lavalley*, refrained from using the statements to impugn the defendant's right to remain silent. As discussed already, there was no such infraction. The prosecutor's closing argument, therefore, was proper. See *Commonwealth* v. *Donovan*, *supra* at 639 ("not improper for the prosecutor to focus the jury's attention on the significant variance between the post-Miranda statement and the trial defense").

Despite the outcome here, prosecutors are well-advised to tread carefully whenever commenting on a defendant's pretrial admissions in a manner that might be viewed as highlighting a failure to provide exculpatory statements to police. What separates reversible error from permissible cross-examination or argument is solely a matter of focus. Such comments are permissible *only* when directed at some proper evidentiary purpose, and where any suggestion that a defendant is guilty merely because he failed to assert his innocence with sufficient vigor is scrupulously avoided.

As we concluded in *Donovan*, these principles apply equally whether or not the defendant takes the stand. *Donovan, supra* at 640. Indeed, a defendant cannot insulate himself from fair comment on his defense theory merely by electing to present it through means other than direct testimony. *Ibid.* (a "defendant is not allowed to advance his own interests with impunity").

Any other approach would unreasonably restrict the government's ability to comment on all the evidence properly before the jury.

2. *Jury review of trial transcripts.* The defendant's second claim requires little discussion. During deliberations, the jury requested a transcript of the victim's testimony. After consultation with the parties, and over the defendant's objection, the judge denied the request, informing the jury that they must rely on their collective memory of the evidence.

As the defendant concedes, a trial judge has broad discretion whether to permit a jury to review transcripts of trial evidence generally, *Commonwealth* v. *Bacigalupo*, 49 Mass. App. Ct. 629, 635 (2000), and such requests must always be treated with caution, *Commonwealth* v. *Mandeville*, 386 Mass. 393, 405 (1982). There is a particular danger inherent in selective review such as the jury sought here; specifically, there is the possibility that freshly reviewed testimony might acquire unfair additional cogency as compared to portions of the trial record not subject to review. *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106, 109 (1984).

In view of the fact that the trial was relatively short, and the principal points of contention were simple matters of credibility, rather than difficult technical matters, we think the trial judge did not abuse his discretion by denying the jury's request for the transcript.

*Judgment affirmed.*